461 Pa. 738 (1975)
337 A.2d 855
COMMONWEALTH of Pennsylvania
v.
Everett BARBER et al., Appellants.
Supreme Court of Pennsylvania.
Argued November 13, 1974.
Decided April 3, 1975.
Rehearing Denied June 2, 1975.
*739 A. Richard Gerber, Gerber, Davenport & Wilenzik, Norristown, for appellants.
Milton O. Moss, Dist. Atty., Stewart J. Greenleaf, Asst. Dist. Atty., Chief, Appeals Div., Norristown, for appellee.
Before JONES, C.J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION OF THE COURT
PER CURIAM:
Appeal quashed. See Commonwealth v. Myers, 457 Pa. 317, 322 A.2d 131 (1974).
EAGEN, J., took no part in the consideration or decision of this case.
ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.
ROBERTS, Justice (dissenting).
The majority refuses to decide the merits of the appeal because, as its citation of Commonwealth v. Myers, 457 Pa. 317, 322 A.2d 131 (1974), indicates, it concludes that the order appealed from is interlocutory and, therefore, not properly appealable. In my view, the order is sufficiently final to form the basis of an appeal. Therefore, I dissent from the order quashing the appeal.
*740 On July 22, 1973, appellants were arrested and charged with the killing of Michael Trunk. Bills of indictment were returned by the grand jury on October 15, 1973. On May 13, and 14, 1974, appellants moved to quash the indictments and dismiss the charges, asserting that their rights to a prompt trial as specified in Pa.R. Crim.P. 1100(a)(1), 19 P.S. Appendix,[1] had been violated. The trial court dismissed the motions and denied relief on May 29, 1974. This appeal followed.
This Court's appellate jurisdiction in cases of felonious homicide depends on the existence of a "final order." Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202, 17 P.S. § 211.202 (Supp. 1974); see also 17 P.S. §§ 211.102(a)(6), .203, .204(a). In general, only the final judgment of sentence in a criminal case is sufficiently final to support appellate jurisdiction. See Commonwealth v. Bunter, 445 Pa. 413, 418, 282 A.2d 705, 707 (1971) (plurality opinion); Commonwealth v. Swanson, 424 Pa. 192, 193, 225 A.2d 231, 232 (1967); Commonwealth v. Haushalter, 423 Pa. 351, 352, 223 A.2d 726, 727 (1963); Commonwealth v. Pollick, 420 Pa. 61, 63, 215 A.2d 904, 905 (1966); but cf. Commonwealth v. Bosurgi, 411 Pa. 56, 190 A.2d 304, cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). A trial court's refusal to quash an indictment is, in most instances, interlocutory and thus not appealable. See Commonwealth v. Bunter, supra; Commonwealth v. O'Brien, 389 Pa. 109, 110-11, 132 A.2d 265 (1957).
The order appealed from in this case is not a final judgment but a refusal to quash indictments. That fact, however, does not end the inquiry. Appealability is determined according to the statutory standard of finality, and "the requirement of finality is to be given a `practical *741 rather than a technical construction.'"[2] In my view, the order appealed from in this case satisfies the finality requirement because it
"fall[s] in that small class [of orders] which finally determines claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."
Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1225-26, 93 L.Ed. 1528 (1949); see Mercantile National Bank v. Langdeau, 371 U.S. 555, 557-58, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963) ("a separate and independent matter, anterior to the merits and not enmeshed in the factual and legal issues comprising the plaintiff's cause of action"); Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 4, 96 L.Ed. 3 (1951); Swift & Co. Packers v. Compania Columbiana Del Caribe, S.A., 339 U.S. 684, 688-89, 70 S.Ct. 861, 864-65, 94 L.Ed. 1206 (1950); United States v. Lansdown, 460 F.2d 164, 170-72 (4th Cir. 1972); cf. Commonwealth v. Novak, 384 Pa. 237, 240, 120 A.2d 543, 544, cert. denied, 352 U.S. 825, 77 S. Ct. 35, 1 L.Ed.2d 48 (1956) ("Where the interlocutory order, for all practical purposes, presents a somewhat final aspect, an appellate court will review it in order to safeguard basic human rights or to prevent a great injustice to a defendant.");[3] see generally Cox Broadcasting *742 Corp. v. Cohn, 420 U.S. 469, 485-486, 95 S.Ct. 1029, 1041, 43 L.Ed.2d 328 (1975).
The nature of the right to a speedy trial establishes that it is collateral to the actual conduct of a trial and that it is too important to be denied review in the sense that, if appellate review is delayed until after trial, "it will be too late effectively to review the present order and the [speedy-trial right] . . . will have been lost, probably irreparably." Cohen v. Beneficial Industrial Loan Corp., supra. The right to a speedy trial is a bundle of analytically separable rights. It includes not only the freedom from being convicted in a defectively tardy trial but also the right, once an impermissible delay has occurred, not to be tried at all. In the latter sense, the right to a speedy trial, like the right not to be placed twice in jeopardy, is a right whose "practical result is to prevent a trial from taking place at all, rather than to prescribe procedural rules that govern the conduct of a trial." Robinson v. Neil, 409 U.S. 505, 509, 93 S.Ct. 876, 878, 35 L.Ed.2d 29 (1973).
The guarantee of a speedy trial has this particular nature because the interests it protects include not only the prevention of prejudice at trial but also minimization of oppressive pretrial incarceration and the anxiety and inhibition *743 caused by an accusation of crime. See United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 463, 30 L.Ed.2d 468 (1971); Klopfer v. North Carolina, 386 U.S. 213, 221-22, 87 S.Ct. 998, 992-93, 18 L.Ed.2d 1 (1967); United States v. Ewell, 383 U.S. 116, 120, 86 S. Ct. 773, 776, 15 L.Ed.2d 627 (1966); Commonwealth v. Hamilton, 449 Pa. 297, 304, 297 A.2d 127, 131 (1972); Amsterdam, Speedy Criminal Trial: Rights and Remedies, 27 Stan.L.Rev. 525, 532-33 (1975). The latter two interests are adversely impacted whenever a trial is impermissibly delayed, independently of any prejudice at trial.
Therefore, the right to a speedy trial is, in an important sense, collateral to the determination of guilt or innocence that takes place at trial. A speedy-trial claim is analytically distinct from the conduct of the trial, and its successful assertion will bar a trial from occurring rather than, as with Fourth and Fifth Amendment claims, regulate the conduct of the trial. This distinctiveness is clear from Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 489-90, 93 S.Ct. 1123, 1127, 35 L. Ed.2d 443 (1973), where a majority of the Court definitively rejected the contention of the dissenters that the denial of the right to a speedy trial is nothing but "a defense to a criminal charge . . . ." Id. at 505, 93 S. Ct. at 1134; see also Strunk v. United States, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).
Furthermore, substantial components of the right will be irretrievably lost if review is delayed until after a trial has occurred. After trial, an appellate court is able to protect an appellant against any prejudice that delay caused at trial by relieving him of a conviction imposed in a prejudiced proceeding. Compare Commonwealth v. Bosurgi, 411 Pa. 56, 64, 190 A.2d 304, 308-09, cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963). But after an impermissibly delayed trial, the other interests that the speedy-trial guarantee protects are irreparably *744 lost  the oppression of pretrial incarceration and the anxiety and obloquy caused by long-pending accusations cannot be willed out of existence by an appellate court. In short, the right not to be tried at all after an impermissible delay is finally determined when a trial court denies relief because, by the time an appellate court reviews the final judgment of sentence, the appellant has in fact been subjected to a trial.[4] If an appellate court is to have an opportunity for effective review, then, with speedy trial claims as with double-jeopardy claims,[5] that review must come before trial.
The considerations discussed in this opinion have been developed in cases dealing with the constitutional right to a speedy trial rather than supervisory rules such as Rule 1100. However, because Rule 1100 was promulgated "in order to more effectively protect the [constitutional] right of criminal defendants to a speedy trial," Commonwealth v. Hamilton, 449 Pa. 297, 308, 297 A.2d 127, 133 (1972), those considerations are equally applicable to it.
In my view, the order dismissing the motions to quash the indictments on speedy-trial grounds is sufficiently final to support appellate jurisdiction. Therefore, the majority errs in refusing to consider the merits.
MANDERINO, J., joins in this dissenting opinion.
NOTES
[1] "Trial in a court case in which a written complaint is filed against the defendant after July 30, 1973, . . . shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed."
[2] Gillespie v. United States Steel Corp., 379 U.S. 148, 152, 85 S. Ct. 308, 311, 13 L.Ed.2d 199 (1964), quoting Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546, 69 S.Ct. 1221, 1226, 93 L. Ed. 1528 (1949).
[3] See also Commonwealth v. Bunter, 445 Pa. 413, 418-19, 282 A. 2d 705, 707 (1971) (plurality opinion):

"[T]he rule prohibiting interlocutory appeal is not one of unyielding inflexibility. When there are special and exceptional circumstances, the defendant may appeal before his trial and conviction from the court's refusal to quash the indictment. One such exceptional circumstance is when an issue of basic human rights is involved.
..........
"[T]he claim of a denial of speedy trial in this case raises an issue of basic human rights and hence is [appealable]."
Another conception of finality would also sustain appellate jurisdiction here. The order is "final," under this view, because (1) refusal of immediate review might seriously erode the important policies embodied in Rule 1100, and (2) a decision on the merits might "be preclusive of any further litigation, . . . rather than merely controlling the nature and character of, or determining the admissibility of evidence in," any further proceedings. Cox Broadcasting Corp. v. Cohn, 420 U.S. 469, 485-486, 95 S.Ct. 1029, 1040, 43 L.Ed.2d 328 (1975); see Local 438, Construction & General Laborers Union v. Curry, 371 U.S. 542, 548-50, 83 S.Ct. 531, 535-37, 9 L.Ed.2d 514 (1963); Mercantile Nat'l Bank v. Langdeau, 371 U.S. 555, 557-58, 83 S.Ct. 520, 522, 9 L.Ed.2d 523 (1963); Rosenblatt v. American Cyanamid Co., 86 S.Ct. 1, 2-3, 15 L.Ed.2d 39 (1965) (opinion of Mr. Justice Goldberg in chambers).
[4] The views expressed in this opinion are inconsistent with Commonwealth v. Myers, 457 Pa. 317, 322 A.2d 131 (1974). The Myers rationale that an "appellant's right to a speedy trial can be adequately protected in review following trial" (id. at 320, 322 A. 2d at 133) is based on a misperception of the nature of the right to a speedy trial.
[5] See United States v. Lansdown, 460 F.2d 164, 170-72 (4th Cir. 1972) (denial of motion to dismiss an indictment on double-jeopardy grounds is an appealable final order).

Commonwealth v. Warfield, 424 Pa. 555, 562, 227 A.2d 177, 181 (1967) (opinion of three Justices), held that an appeal from an adverse determination of a motion to quash an indictment for violation of the double jeopardy provision of Pa.Const. art. I, § 10, P. S. is interlocutory. Besides failing to express the views of a majority of the Court, Warfield has been thoroughly undermined by Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).