353 A.2d 848

**COMMONWEALTH of Pennsylvania**

v.

**Dale H. REINHART, Appellant.**

Supreme Court of Pennsylvania.
Argued Oct. 20, 1975.
Decided March 18, 1976.

W. D. Balitas, Anthony J. Urban, Public Defenders, Pottsville, for appellant.

Richard B. Russell, Dist. Atty., Adam D. Bavolack, First Asst. Dist. Atty., Pottsville, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

 In this appeal,[1] we are presented with three issues arising from the grant of a nolle prosequi: (1) is Pa.R.Crim.P. 314(a),[2] which provides that a trial court

1. We hear this case under authority of the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 205, 17 P.S. § 211.205 (Supp.1975); id., art. V, § 503(a), 17 P.S. § 211.-503(a). See *Commonwealth v. Leaming,* 442 Pa. 223, 225–26, 275 A.2d 43, 44 (1971):

 "We must address ourselves initially to the question of the appealability of the order granting the nolle prosequi. The Commonwealth asserts that the order is interlocutory, noting that appellant could raise his speedy trial claim if and when the Commonwealth petitions the trial court to remove the nolle prosequi and that the necessity for our review of the speedy trial issue would disappear altogether if appellant were to win an acquittal upon retrial.

 "To the extent that the constitutional guarantee of speedy trial reflects a desire to minimize the degree to which pretrial delay hampers an accused's ability to defend himself, appellant would indeed have an adequate opportunity to secure relief by appealing any subsequent conviction on the ground of prejudicial delay. However, the speedy trial guarantee is also much concerned with limiting the period of 'anxiety and concern accompanying public accusation.' *United States v. Ewell,* 383 U. S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627 (1966), and, in this regard, quashing the instant appeal makes little sense. The logic of the Commonwealth's position allows for the possibility that appellant will be forced to live under the shadow of a pending indictment for years, and appellate review after trial at the expiration of such a potentially long period can provide no effective remedy for the intervening anxiety and concern. Accordingly, even if the nolle prosequi order be interlocutory, the particular nature of the speedy trial issue presents 'exceptional circumstances' dictating appealability."

 Cf. *Commonwealth v. Bunter,* 445 Pa. 413, 417, 282 A.2d 705, 707 (1971) (motion to quash indictment appealable interlocutory order). But cf. *Commonwealth v. Barber,* 461 Pa. 738, 337 A.2d 855 (1975) (motion to quash indictment not appealable order).

 We note, with disapproval, that neither appellant nor the Commonwealth has provided the required jurisdictional statement in the briefs filed in this Court. See Pa.Sup.Ct.R. 47.

2. Pa.R.Crim.P. 314(a):

 "(a) Upon application of the attorney for the Commonwealth, the court may, in open court, order a nolle prosequi notwithstanding the objection of any person."

may, upon request of the Commonwealth, grant a nolle prosequi "notwithstanding the objection of any person," valid under the Federal Constitution; (2) was appellant denied due process of law under the Federal Constitution by the trial court's grant of a nolle prosequi; and (3) was the trial court's grant of a nolle prosequi an abuse of discretion.

On February 1, 1972, after several hours of drinking with undercover agents of the Pennsylvania State Police, Joseph Francis Bowers confided that he and two other men had been involved in the burglary-murder of John L. Miller in June of 1969. A week later the agents again sought out Bowers, who once again admitted his participation in the crime. A criminal complaint was filed against Bowers on March 8, 1972, and he was indicted on July 13, 1972.

While in prison, Bowers gave police a formal statement implicating himself, one Kemmerling, one Schneck and appellant in Miller's murder. Criminal complaints against the three were filed on June 27, 1972, and they were indicted October 4, 1972.

Counsel was appointed to defend appellant in July 1972. This counsel, however, withdrew from the case on October 2, 1972, two days before appellant was indicted, and was replaced by the public defender. The case was called for trial on November 15, 1972, at which time the defender, over appellant's objection in open court, moved for a continuance because he was not ready to go to trial. The continuance was granted, with trial scheduled for January 1973.

Schneck's case proceeded more quickly than did appellant's. A jury was sworn in Schneck's case on January 8, 1973. Bowers, the only witness able to link both Schneck and appellant to the crimes charged was called but refused to testify, asserting his right to remain silent. The Commonwealth, caught by surprise, was un-

able to prove its case and was unable to obtain either a continuance or a nolle prosequi. Schneck was acquitted.

At this time a jury was being selected to hear appellant's case but had not yet been sworn. When Bowers refused to testify in Schneck's trial on January 8th, the Commonwealth asked for and was granted a short continuance in appellant's trial to determine whether Bowers would again refuse to testify if called as a witness in appellant's case. During the continuance Bowers, his attorney and attorneys for the Commonwealth conferred. Bowers indicated that he would refuse to testify in appellant's trial.

When appellant's trial resumed the following day, January 9th, the Commonwealth requested a continuance, alleging that it could not, without Bowers' testimony, prove a prima facie case. This motion was denied. The Commonwealth then requested a nolle prosequi. After hearing argument from both appellant and the Commonwealth, the nolle prosequi was granted. In its written opinion, the trial court, relying on Pa.R.Crim.P. 314(a) and *Commonwealth v. DiPasquale,* 431 Pa. 536, 246 A.2d 430 (1968), stated that the grant of the nolle prosequi was a proper exercise of the trial court's discretion. Appellant appeals from the order granting the nolle prosequi.

 Appellant challenges the constitutionality of Pa. R.Crim.P. 314(a). His attack seems to focus on the "notwithstanding the objection of any person" portion of the rule. After quoting rule 314(a), appellant states:

"By its' [sic] language, the rule closes the door on all defendants and gives to the attorney for the Commonwealth the exclusive and sole right to prosecute or not to prosecute. Defendant's rights are completely ignored. There are no provisions for any processes on a defendant's behalf. Clearly a denial of due process." [3]

3. Brief for Appellant at 7.

In this case, however, the record shows that appellant was permitted to present objections to the trial court before the nolle prosequi was granted. It is clear, therefore, that the trial court did not interpret the "notwithstanding the objection of any person" language to bar such argument. Nor does appellant allege that the trial court ignored his arguments, thus making the opportunity to present them meaningless. The record shows that the trial court indicated it would consider the merits of appellant's argument and there is no basis for this Court to conclude that it did otherwise.

The trial court's action in this case was perfectly consistent with the rule. The challenged language merely means that a criminal defendant does not have an absolute right to be tried on demand. A motion for a nolle prosequi is treated like any other motion: one side presents the motion to the court; both sides argue the merits of the requested motion; the court considers the merits of their arguments; and the trial court issues a ruling. The rule in no way bars the presentation of objections by the defendant nor does it direct the trial court to ignore those objections. It merely states that the defendant's objection is not dispositive of the issue.

We now turn to appellant's claim that the grant of a nolle prosequi, apart from the validity of the rule, denied him due process of law.[4] Appellant relies primarily on *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), which held that the sixth amendment guarantee of a speedy trial is applicable to the states through the fourteenth amendment.

A speedy trial claim is analyzed in two steps: (1) is the delay itself sufficiently long to trigger the "necessity for inquiry into other factors that go into the

---

**4.** Appellant asserts no claim under either Pa.Const., art. I, § 9, nor under Pa.R.Crim.P. 1100. We, therefore, do not address these issues.

balance," [5] and (2) a balancing of the length of delay, reason for delay, defendant's assertion of the right and prejudice to the defendant.[6]

Appellant was indicted October 4, 1972, and the trial was scheduled to begin November 13, 1972. When appellant's case was called on November 15, 1972, appellant's counsel, the public defender, requested and was granted, over appellant's objection, a continuance until the January court term. The case was called for trial on January 5, 1973, and the nolle prosequi was granted January 8, 1973.

The issue we must decide is whether the grant of a nolle prosequi on January 8 denied appellant due process of law by denying him his right to a speedy trial. We must consider this issue in light of the facts and circumstances extant on January 8th.[7]

The total delay from indictment to nolle prosequi was 93 days.[8] We do not believe that a 93 day

5. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L. Ed.2d 101 (1972).

6. Id. at 530–33, 92 S.Ct. at 2192–93.

7. A decision which reflected facts and events after January 8, 1973, would require us either to speculate what occurred after that date or to take evidence ourselves. Neither is an appropriate activity for an appellate court.
 If the situation has changed between January 8, 1973, and the present, appellant is free under Pa.R.Crim.P. 304 to make a pretrial application to quash the indictment or for other relief. This factor distinguishes this case from *Klopfer* in which there was no way by which Klopfer could have the outstanding charges either tried or dismissed.

8. Appellant, in his brief with this Court, details the lapse of time between the Commonwealth's knowledge of his alleged participation in Miller's murder and his indictment. We do not consider this time in determining whether the delay was sufficient to trigger the full *Barker* analysis because the speedy trial protection afforded by the Federal Constitution applies only to delay between indictment and trial.
 "The Supreme Court recently held that the constitutional right to a speedy trial, guaranteed by the Sixth Amendment and held applicable to the states by the Fourteenth Amendment . . . only protects defendants from prosecutorial delay between indictment and trial. *United States v. Marion,* 404 U. S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1972). The Court's deci-

delay [9] is sufficient to trigger the full speedy trial inquiry when the charge involved is a major felony.[10] We therefore hold that the grant of a nolle prosequi on January 8, 1973, did not deny appellant his right to a speedy trial because the delay involved was not sufficiently long to be presumptively prejudicial.

Finally, appellant argues that the trial court abused its discretion by granting the nolle prosequi. Appellant relies on the Commonwealth's readiness to go to trial on November 15, 1972, when the public defender requested a continuance, and its reaffirmance of that readiness on January 5, 1973, when the case was called. Appellant concludes that the trial court abused its discretion by believing the Commonwealth's statement, on January 8, 1973, that it could not prove a prima facie case and by granting a nolle prosequi on that basis. We disagree.

A trial court's grant of a nolle prosequi will not be overturned on appeal unless it appears to be an abuse of discretion.[11] Pennsylvania law indicates that there are two factors to be considered when a request for a nolle prosequi is made: (1) is the reason given by the

> sion in *Marion* rested in large part on the presence of statutes of limitations designed to protect defendants against pre-indictment delay . . . . ."
> *Commonwealth v. Cardonick,* 448 Pa. 322, 333, 292 A.2d 402, 408 (1972).

9. For purposes of determining whether the full *Barker* analysis should be applied we take the total delay between indictment and the grant of the nolle prosequi. This initial determination looks only to the amount of delay. If the delay is sufficient to trigger the full analysis, we may then look to the causes of the delay to determine whether appellant's speedy trial rights have been infringed. Cf. Pa.R.Crim.P. 1100(d); *Townsend v. Superior Court,* 15 Cal.3d 774, 126 Cal.Rptr. 251, 543 P.2d 607 (1975) [18 Crim.L. Rptr. 2368 (1975)].

10. See *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972).

11. *Commonwealth DiPasquale,* 431 Pa. 536, 541, 246 A.2d 431, 432 (1968):
> "The grant or refusal of a petition for a nolle pros and for a continuance lies within the sound discretion of the lower court, and its action will not be reversed in the absence of an abuse of discretion."

**600** 

Commonwealth for requesting the nolle prosequi valid and reasonable,[12] and (2) does the defendant, at the time the nolle prosequi is requested, have a valid speedy trial claim?[13]

We have already determined that appellant did not have a speedy trial claim on January 8. Therefore, if the Commonwealth had a valid reason for requesting the nolle prosequi, the trial court's action will be upheld.

The Commonwealth was clearly surprised by Bowers' refusal to testify; otherwise they would never have risked empaneling a jury in the Schneck case. Because it was surprised by the sudden unavailability of Bowers' testimony, the earlier representations of preparedness cannot be regarded as deliberate, or even negligent attempts to detective either appellant or the court or to subject appellant to unnecessary delay or other burden.

 Although the refusal of a witness to testify is not completely analogous to the unavailability of a witness, it is nonetheless a valid basis for some trial delay. As the United States Supreme Court stated in *Barker v. Wingo*, 407 U.S. 514, 534, 92 S.Ct. 2182, 2194, 33 L.Ed.2d 101 (1972):

> "[S]ome delay would have been permissible under ordinary circumstances, so that Manning could be utilized as a witness in Barker's trial . . . ."

Manning, of course, was the Bowers of Barker's case: a co-defendant who refused to testify because to do so would implicate himself. The delay the Court was approving was the time ordinarily necessary to try and convict the reluctant witness, thus invalidating his claim of privilege.

**12.** See *Commonwealth v. Leaming*, 442 Pa. 223, 275 A.2d 43 (1971). In *Leaming* we vacated the nolle prosequi because we found its grant to be an abuse of discretion. We remanded the case for a "prompt trial or, failing that, for final dismissal of the charges." Appellant here is not entitled to the *Leaming* relief because the record presents substantially different facts justifying the grant of the nolle prosequi.

**13.** See, e. g., *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968).

Because appellant did not have a valid speedy trial claim when the nolle prosequi was granted and because the Commonwealth had a proper reason for requesting it, the grant of a nolle prosequi in appellant's case was proper.

Order affirmed.

MANDERINO, J., joins in this opinion and files a concurring opinion.

EAGEN and POMEROY, JJ., concur in the result.

NIX, J., filed a dissenting opinion.

NIX, Justice (dissenting).

In my judgment, the majority has failed to perceive the full thrust of appellant's due process claim. I believe appellant's position to be meritorious and therefore dissent.

The members of the majority focused upon the question of a speedy trial and concluded that the rights of the accused in that regard were adequately protected. While I do not find that result troublesome, I am concerned that no attention was given to the question of an accused's right to insist upon trial before his peers for the purpose of seeking public vindication once he has been formally charged with crime.

The protection of due process is not limited to possible threats against one's penal interest. The reputation of an individual is as precious as any interest and is ofttimes gained only after years of industry and restraint.[1] Where a system permits that reputation to be sullied and stained through the government's virtually unfettered right to initiate prosecution, that system must also pro-

1. "The purest treasure mortal times afford is spotless reputation." Shakespeare, King Richard II, Act I, Sc. 1.

"He whose honour depends on the opinion of the mob must day by day strive with the greatest anxiety, act and scheme in order to retain his reputation. For the mob is varied and inconstant, and therefore if a reputation is not carefully preserved it dies quickly." Spinoza, Ethics, Prop. LVIII, Note.

602

vide the person charged with an adequate opportunity for exoneration where the charges proved to be unwarranted or incapable of substantiation.[2]

To allow the imposition of a nolle pros, over the objection of the accused, forecloses the right to effectively demonstrate the fallaciousness of the imputation occasioned by the institution of the original prosecution. Even where the possibility of further prosecution is foreclosed, the accused is not relieved of the stigma caused by the arrest and indictment. Where the action is terminated by a nolle pros, it is the decision of the prosecutor and not necessarily the innocence of the person that brings about the result. Where one has a trial before his peers, he is afforded the opportunity to affirmatively demonstrate his innocence.

I am fully cognizant of the presumption of innocence. However, realistically we all must concede that this presumption alone is incapable of fully removing the stain. Due process must also provide a reciprocal right to the person charged to compel the Commonwealth to expose to public scrutiny the basis upon which the charges were brought, and also supply a forum in which testimony may be offered to refute the accusations and eradicate the suggestion of impropriety. The presumption of innocence requires the Commonwealth to prove guilt but it should not be construed as a basis for denying the defendant the right to affirmatively establish his innocence.

MANDERINO, Justice (concurring).

I join in the opinion of Mr. Justice Roberts which properly does not address itself to whether the prosecution may at any future date prosecute the appellant. That is an issue which need not be considered in this appeal.

2. Nor can it be argued that an adequate redress is provided by tort liability. In many instances one may be mistakenly charged with crime and yet not have available to him civil redress.