COMMONWEALTH of Pennsylvania,
Appellee

v.

Jonathan HARRIS, Appellant.

Superior Court of Pennsylvania.

Submitted March 9, 2009.

Filed Aug. 11, 2009.

Joseph S. O'Keefe, Philadelphia, for appellant.

Hugh J. Burns, Jr., Asst. Dist. Atty., Philadelphia, for the Com., appellee.

BEFORE: STEVENS, PANELLA, and FREEDBERG, JJ.

OPINION BY STEVENS, J.:

¶ 1 Appellant, Jonathan Harris, appeals from a judgment of sentence entered in the Court of Common Pleas of Philadelphia County. We affirm.

¶ 2 This matter stems from a September 23, 2001 shooting on the streets of Philadelphia. Witnesses saw Harris arguing with Leon Bryant, who got into a car occupied by Joseph Pratt. As the car drove away, Harris and an accomplice fired multiple shots into it, killing Bryant and wounding Pratt. Following an August 2003 jury trial, during which Harris represented himself, he was found not guilty of first degree murder and voluntary manslaughter. A mistrial was declared, however, because the jury deadlocked on the charges of third degree murder, possessing instruments of crime (PIC), criminal conspiracy, and recklessly endangering another person.

¶ 3 Harris, again representing himself, was retried in December 2003. Following his second jury trial, Harris was found guilty of PIC and criminal conspiracy, and not guilty of recklessly endangering another person, but the jury again deadlocked on the third degree murder charge. Harris was subsequently sentenced to two and a half to five years' incarceration on the PIC conviction, and a consecutive ten to twenty years' incarceration for the criminal conspiracy conviction. Harris appealed, and through counsel raised the allegation that the trial court had erred in allowing him to proceed *pro se* without conducting a full colloquy. A panel of this Court agreed, and, on September 1, 2005, vacated the judgment of sentence and remanded the matter for a new trial.

¶ 4 Harris' third jury trial commenced in January 2007, before the distinguished trial judge Renee Cardwell Hughes. Harris, again choosing to represent himself, was eventually convicted of third degree murder, criminal conspiracy, and PIC. Judge Hughes, who had presided over Harris' second trial as well, sentenced him to 20 to 40 years' incarceration for third degree murder, a consecutive 20 to 40 years' incarceration for conspiracy, and a consecutive two and one half to five years for PIC.

¶ 5 Harris now appeals,[1] raising the following issues for our review:

1. Did the trial court err in denying the defendant's motion for recusal without a hearing?

2. Did the trial court err in failing to properly instruct the jury as to mere presence?

3. Did the trial court err in allowing the prosecution to read the defendant's prior testimony concerning Joseph Pratt?

4. Did the trial court err in repeatedly interrupting the defendant's pro se closing argument?

5. Did the court err in lifting the nolle prosequi without a hearing?

---

1.  Counsel has been appointed for purposes of appeal, and a counseled Pa.R.A.P. 1925(b) statement was been filed. We note that since counsel was ordered to file the statement before receiving the trial transcripts, we will overlook what would otherwise be considered unacceptable vagueness in the statement. *Commonwealth v. McCurdy,* 943 A.2d 299, 301 (Pa.Super.2008).

6. Did the prosecutor engage in misconduct during his closing argument?

7. Did the trial court err in allowing the prosecutor to introduce portions of the bail motion as an admission of guilt?

Appellant's brief at 3. We address these claims in order.

## A. RECUSAL:

■■■ ¶ 6 Turning to Harris' first allegation, we note that although he asserts that the trial court erred in denying his motion for recusal "without a hearing," his actual argument is focused on the underlying denial of the motion, and does not discuss or provide supporting case law regarding the failure to hold a hearing on the motion.[2] As such, we consider this a challenge to the denial of a motion for recusal.[3]

Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are "honorable, fair and competent," and

---

2. We also note that Harris' Rule 1925(b) statement merely asserts that the trial court "erred in denying the defendant's Motion to Recuse himself," and makes no mention of the failure to hold a hearing before doing so. Pa.R.A.P. 1925(b) statement filed 9/26/07 at 1.

3. In the instant matter, although there is some confusion over when the actual motion for recusal was made, it is apparent that the request was made, and denied, prior to Harris' third trial in 2007. In her Rule 1925(a) Opinion, Judge Hughes indicates that Harris' claim of error should be dismissed because it "misstates the record and has no basis in fact." Rule 1925(a) Opinion filed 7/8/08 at 2. Specifically, Judge Hughes avers that no motion for recusal was presented to her, and points out that Harris' Rule 1925(b) statement fails to provide a date when the alleged motion was filed, and cites to no transcript which would contain reference to such a motion. *Id.* Judge Hughes' confusion is understandable, considering the procedural circumstances surrounding this issue.

Judge Hughes is correct that Harris' Rule 1925(b) statement does not identify the recusal motion in question, nor does it provide citation to any portion of the record which might assist in identifying the motion. His appellate brief offers more details, but they only serve to confuse the matter. Therein, Harris asserts that "prior to trial, the defendant filed a 'Motion for Recusal of the Trial Judge.' " Appellant's brief at 6 (*citing* Appendix II). Appendix II contains a recusal motion which is dated April 10, 2006, and which bears a May 1, 2006 Court of Common Pleas time stamp. Harris then asserts, however, that the trial court denied the motion on March 23, 2006. Appellant's brief at 6. It is obviously impossible for the trial court to have denied the May 1st motion on March 23rd, since the motion did not yet exist.

Reviewing the certified record to sort out the procedural anomaly before us, we have confirmed that the record contains the March 23, 2006 order denying a motion for recusal, as well as the subsequently filed May 1st motion requesting recusal. Both documents have been noted on the docket sheet. The certified record reveals additional details which help explain the situation. On March 17, 2006, Harris filed a motion for bail. Judge Hughes' March 23, 2006 Order denies a motion for recusal **and** a motion for bail. The March 23, 2006 order was mailed to Harris, who, upon its receipt, sent a letter to President Judge Darnell Jones on April 17, 2006 complaining of Judge Hughes' failure to recuse herself. Attached to the April 17, 2006 letter was the recusal motion dated April 10th, which was then time stamped by the lower court on May 1st. Since Judge Hughes had already, addressed the recusal request, and had determined that recusal was not necessary, Judge Jones properly ignored the April 17, 2006 letter. *Commonwealth v. Bonds*, 890 A.2d 414, 418 (Pa.Super.2005) ("As a general rule, a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged.... This is a personal and unreviewable decision that only the jurist can make."); *Commonwealth v. Stivala*, 435 Pa.Super. 176, 645 A.2d 257, 264 (1994) ("Once this decision is made, it is final and the cause must proceed. The propriety of this decision is grounded in abuse of discretion and is preserved as any other assignment of error, should the objecting party find it necessary to appeal following the conclusion of the cause.").

although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.

*Bonds,* 890 A.2d at 418 (*citing Commonwealth v. Abu–Jamal,* 553 Pa. 485, 720 A.2d 79, 89 (1998)).

> The party who asserts that a trial judge should recuse bears the burden of setting forth specific evidence of bias, prejudice, or unfairness. *See Commonwealth v. Perry,* 468 Pa. 515, 364 A.2d 312, 318 (1976). "Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion." *Commonwealth v. Buehl,* 540 Pa. 493, 658 A.2d 771, 782 (1995).

*Commonwealth v. Stafford,* 749 A.2d 489, 501 (Pa.Super.2000). *See also Commonwealth v. Tedford,* 598 Pa. 639, 731, 960 A.2d 1, 55–56 (2008) ("[I]t is the burden of the party requesting recusal 'to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.' ").

¶ 7 Once a decision to deny a recusal request has been made, that decision is final and the cause must proceed. *Commonwealth v. Urrutia,* 439 Pa.Super. 227, 653 A.2d 706, 711 (1995).

> The propriety of this decision is grounded in abuse of discretion and is preserved as any other assignment of error, should the objecting party find it necessary to appeal following the conclusion of the cause. If the cause is appealed, the record is before the appellate court which can determine whether a fair and impartial trial were had. *If so the alleged disqualifying factors of the trial judge become moot.*

*Id.* (italics in original) (citation omitted). *See also Commonwealth v. Simmons,* 388 Pa.Super. 271, 565 A.2d 481, 482 (1989).

¶ 8 Here, like the appellant in *Urrutia,* Harris raised the question of the trial judge's partiality prior to trial, and the trial judge concluded that she was fully capable of presiding in a fair and unbiased manner. As the *Urrutia* Court explained, "it therefore falls to this court to determine whether the trial was fair and impartial. If the trial was fair, any allegations of bias are moot." *Urrutia,* 653 A.2d at 711.

¶ 9 In the present matter, the bulk of Harris' argument regarding recusal fails to allege, let alone demonstrate, that his 2007 trial was not fair or impartial. In the first instance, Harris claims that Judge Hughes showed partiality against him when, during his 2003 trial, she refused to allow court-appointed back up counsel, Attorney Charles Mirarchi, III, to sit with him, instead instructing counsel to "sit in the back row and be available when he could." Appellant's brief at 9 (*citing* N.T. 12/15/03 at 13–14).

¶ 10 This argument does nothing to convince us that the 2007 trial was unfair or lacking in impartiality, and we note with extreme displeasure that it distorts the facts. The wording of Harris' appellate brief implies that Judge Hughes forced counsel to sit in the back row of the courtroom, where he would be unable to assist Harris, and to merely "stop by" every now and then, depriving Harris of "meaningful assistance." Appellant's brief at 9. A reading of the cited trial transcript reveals this to be a misstatement at best, and purposefully deceptive to the Court at worst.

¶ 11 Attorney Mirarchi was appointed to serve as Harris' back up counsel during his

second trial,[4] and he appeared with Harris at a November 6, 2003 bail hearing. When trial commenced on the day in question, December 15, 2003, Attorney Mirarchi was involved in another case which was to close that day. N.T. 12/15/03 at 12. Nevertheless, Harris advised Judge Hughes that he wished to proceed *without* back up counsel. *Id.* at 12–13. When Attorney Mirarchi appeared shortly thereafter to explain his schedule to Judge Hughes, he confirmed that Harris wished to proceed with jury selection that day without him. *Id.* Judge Hughes acquiesced, but advised Attorney Mirarchi to make himself available during the luncheon recess of his other case, during that evening, and during the following day for opening argument "as much as you can." *Id.* at 13. As Harris claims, Judge Hughes did instruct Attorney Mirarchi to sit "in the back row," but as Attorney Mirarchi's affirmative response to this instruction makes clear, that meant sitting *right behind* Harris as opposed to next to him. *Id.* at 14. Attorney Mirarchi then remained with Harris during subsequent discussion of outstanding motions to offer his assistance during some points of that discussion. *Id.* at 21–22. As such, not only does this claim fail to show that the 2007 trial was not fair and impartial, *Urrutia, supra,* it is factually inaccurate.[5]

¶ 12 Harris also baldly asserts that "during the sentencing hearing after the former trial," Judge Hughes showed partiality against him by finding him in contempt of court "without a hearing, or advising Mr. Harris of his right to a hearing, nor providing the defendant with counsel to represent him." Appellant's brief at 9.[6] Since Harris has not bothered to specify to which of the previous trials he is referring, or to provide citation to the transcript of either of those trials, we do not know which part of the certified record, if any, would support these allegations. When an allegation is unsupported any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal. Pa.R.A.P. 2119(c) (requiring that if reference is made to the record, it must be accompanied by a citation to the record); *Commonwealth v. Einhorn,* 911 A.2d 960, 970 (Pa.Super.2006) ("An appellate brief must provide citations to the record and to any relevant supporting authority. This Court will not become the counsel for an appellant, 'and will not, therefore, consider issues ... which are not fully developed in [the] brief.' "). *See also Commonwealth v. Tielsch,* 934 A.2d 81, 93 (Pa.Super.2007); *Commonwealth v. Judd,* 897 A.2d 1224, 1233 (Pa.Super.2006).

¶ 13 Even if preserved, however, this allegation regarding the finding of contempt during a previous trial fails to allege, much less prove, the existence of any prejudice suffered by Harris during his 2007 trial, and offers nothing to convince us that the 2007 trial was not fair and impartial. *Urrutia, supra.* Moreover, the claim would provide no relief regardless of which trial it pertained to. *In re Adams,* 435 Pa.Super. 202, 645 A.2d 269, 272–273 (1994), *appeal denied,* 539 Pa. 686, 653 A.2d 1225 (1994) (A judge before whom contemptuous conduct occurs has the power to impose punishment for such conduct

---

**4.** It appears that Attorney Mirarchi also served in this capacity during Harris' first trial.

**5.** We note that counsel was permitted to sit next to Harris during the 2007 trial. N.T. 1/19/07 at 14.

**6.** Harris does not dispute the actual finding of contempt.

and appropriate sanctions without recusing herself, unless there is a running, bitter controversy between the judge and offender.) Here, Harris claims only the "appearance of impropriety" caused by the alleged actions of Judge Hughes, not a "running, bitter controversy."

¶ 14 Harris further asserts that Judge Hughes showed prejudice against him resulting in the appearance of impropriety when she imposed a higher bail during the 2007 hearing, when the charges against him were reduced, than she imposed during one of his previous trials. Appellant's brief at 10. This claim consists of a mere four sentences of argument, and again contains no citation to the record or to pertinent case or statutory law to support it. Further, Harris provides nothing to suggest that the amount of bail resulted in an unfair or partial trial. As such, the claim is waived for purposes of appeal, and even if preserved would provide no grounds for relief in light of the lack of showing of prejudice. Pa.R.A.P. 2119(c); *Urrutia, supra.*

¶ 15 Also without an allegation that he was actually prejudiced, Harris additionally asserts that during the 2007 trial Judge Hughes allowed the Commonwealth to solicit evidence that he was incarcerated, despite a pretrial ruling precluding such evidence. Appellant's brief at 10 (*citing* N.T. 1/23/07 at 166–167; N.T. 1/24/07 at 108–109; 1/25/07 at 104–105). A review of these portions of the transcript reveals, however, that Harris did not raise any objections during trial which would have given Judge Hughes an opportunity to strike the testimony or offer curative instructions to the jury. As such, Harris cannot now fault her for failing to take action when he himself took none.

¶ 16 Harris finalizes his allegations of error with regard to recusal with various allegations which lack supporting argument or citation to pertinent authority. As a result, such claims provide him no relief.[7]

¶ 17 For the forgoing reasons, we find that Harris has failed to demonstrate that

---

7. As part of his multitude of claims, Harris first argues that Judge Hughes should have recused herself from presiding over the 2007 hearing because *after* the hearing Harris had difficulty securing trial transcripts. Appellant's brief at 11. Harris does not specify *which* trial transcripts, but this argument is nonsensical regardless of which ones are in question.

Harris also makes a single sentence allegation that Judge Hughes, over Harris' objection and with no cautionary instruction, allowed the prosecution to "compare the defendant on the streets of Philadelphia with the people being killed in the war in Iraq." *Id.* (*citing* N.T. 1/26/07 at 147–148). A review of the transcript cited shows that during its closing, the prosecution made the following statement which elicited an unsuccessful objection from Harris: "I was just outside the courtroom five minutes ago, looking at today's, the cover of the Daily News. It has all these headlines about people being shot and murdered and killed in Iraq. The one thing about ..." N.T. 1/26/07 at 147–148. We first note that since Harris was obviously not the person shot and killed in this case, it appears that the prosecution was actually comparing the victims, not Harris, to the people being killed in Iraq. Additionally, since Harris makes no claims of prejudice with regard to this allegation, or asserts that it rendered his trial unfair and lacking impartiality, it provides no grounds for relief. *Urrutia, supra.*

Harris also levels a single sentence allegation that Judge Hughes failed to provide a "mere presence charge." Appellant's brief at 11. This allegation is wholly without supporting argument here, but is raised in another section of Harris's brief and will be addressed in turn.

Harris finally claims that Judge Hughes expressed her "personal opinions" of him, showing partiality against him. Since Harris does not bother to cite to the portions of the record containing such expressions, this allegation is waived. Pa.R.A.P. 2119(c).

he did not receive a fair and impartial trial as the result of Judge Hughes' decision to deny the motion to recuse herself. As such, he is entitled to no appellate relief on this ground.

## B. JURY INSTRUCTIONS

¶ 18 Harris' second allegation of error asserts that Judge Hughes erred in "failing to properly instruct the jury as to mere presence." Appellant's brief at 3, 12. Harris offered the proposed instruction prior to Judge Hughes charging the jury on January 30, 2007. N.T. 1/25/07 at 198; N.T. 1/29/07 at 5.[8] Judge Hughes responded that the concept of "mere presence" was "built into the conspiracy charge," and opined that she did not think the charge was necessary. *Id.* at 5–6.[9] She nonetheless agreed to hold onto the proposed charge in case the jury had a question on the issue of conspiracy, and noted Harris' objection. *Id.* at 6–7.

¶ 19 The lengthy instruction on conspiracy which was eventually given included the following language: "a defendant cannot be convicted merely because a defendant was present with others or even because the defendant knew what other people planned to do or were actually doing. There must be proof of an agreement between the defendant and another person to form or to continue a conspiracy." N.T. 1/29/07 at 37. At the close of the charge, Judge Hughes inquired of the parties, "Is there anything you need to place on the record or anything additional that you wish me to tell the jury before they begin deliberation?" to which Harris responded in the negative. *Id.* at 50–51.[10]

¶ 20 On appeal, Harris now raises a two-fold allegation of error regarding the jury

---

**8.** Although the full charge was not read into the record, Harris' appellate brief indicates the requested charge was worded as follows:

> A person is not guilty of a crime if he was merely present at the time of its commission.
>
> You cannot find a person guilty of a crime because he/she associated with the actual perpetrator.
>
> You cannot convict a person merely because he/she was present while another person committed the crime(s) in question.
>
> You cannot convict the defendant merely because he/she was present while another person committed the crimes(s) in question, even if the defendant was aware that the other person was going to commit the crime(s) in question.
>
> You can only convict the defendant, if it is proven beyond a reasonable doubt that he/she was present, knew that the crimes were going to be committed, and if the defendant was in fact an active participant in the criminal activity.
>
> You cannot assume that the defendant is an active participant in the crime(s) in question merely because you find that he was present and knew of the criminal activity; you can find that he was an active

participant only if the evidence proves, beyond a reasonable doubt, that he not only knew of the criminal activity but that he intended to, and did in fact, participate in it.

Appellant's brief, Appendix IV.

**9.** Judge Hughes further explained to Harris that since the filing of *Commonwealth v. Henderson*, 249 Pa.Super. 472, 378 A.2d 393 (1977), the decision on which Harris based his proposed instruction, the Standard Jury Instructions have been revised to incorporate the findings of that case. N.T. 1/29/07 at 9.

**10.** Despite Harris' failure to object to the charge at this point, Judge Hughes' earlier acknowledgment that she noted his objection will be viewed as sufficient to preserve his current appellate challenge. *Commonwealth v. Pressley*, 584 Pa. 624, 632, 887 A.2d 220, 225 (2005) (Holding that "under Criminal Procedural Rules 603 and 647(B), the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice to preserve an issue, absent a specific objection or exception to the charge or the trial court's ruling respecting the points.").

charge. He first asserts that it was error for Judge Hughes to reject his proposed charge on "mere presence," and instead offered a general charge on conspiracy. *Id.* at 13, 15. In addition, he asserts that the conspiracy charge actually given was "insufficient as to the law of 'mere presence' and not in accordance with the mandates of *Henderson.* . . ." *Id.* at 15. Neither of these allegations merits relief.

¶ 21 Judge Hughes' refusal to give the proposed "mere presence" charge will only be reversed if Harris proves that the refusal amounted to an abuse of discretion. *Commonwealth v. Al Hamilton Contracting Co.,* 383 Pa.Super. 429, 557 A.2d 15, 17 (1989) ("[T]he decision of the trial court to refuse to charge the jury in the specific manner requested by a party will only be reversed if an abuse of discretion is shown."). Further, "[t]he refusal to give a proper instruction requested by a [defendant] is ground for a new trial only if the substance thereof has not otherwise been covered by the trial court's general charge." *Commonwealth v. Shoup,* 423 Pa.Super. 12, 620 A.2d 15, 20 (1993) (*citing Commonwealth v. LaMassa,* 367 Pa.Super. 54, 532 A.2d 450, 452 (1987)).

¶ 22 As Judge Hughes herself clearly explained, the substance of the proposed charge has been included in the 2005 amendments to the Standard Jury Instructions, and thus was covered by the conspiracy charge she gave, which was based on those standard instructions. N.T. 1/25/07 at 3, 5–9; N.T. 1/29/07 at 34–39. We decline to find that Judge Hughes abused her discretion in this regard. *Commonwealth v. Prosdocimo,* 525 Pa. 147, 150, 578 A.2d 1273, 1274 (1990) ("When evaluating jury instructions, the charge must be read as a whole to determine whether it was fair or prejudicial. The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration."); *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336, 1344–1345 (1994) (finding no error in the trial court's refusal to issue a separate "mere presence" instruction when the trial court's conspiracy charge as a whole conveyed to the jury that a defendant does not become criminally liable for merely being at the scene of a crime or merely knowing about a crime).

## C. USE OF HARRIS' PRIOR TESTIMONY

¶ 23 Harris argues that Judge Hughes "erred in allowing the prosecution to read the defendant's prior testimony concerning Joseph Pratt." Appellant' brief at 15. Because this allegation is unsupported any citation to the record, we are prevented from assessing this issue and determining whether Judge Hughes did, in fact, err in this regard.[11] As such, it is waived for purposes of appeal. Pa. R.A.P. 2119(c); *Tielsch, supra; Einhorn, supra; Judd, supra.*

## D. INTERRUPTION OF CLOSING ARGUMENT

¶ 24 Harris asserts that judgment must be arrested because Judge Hughes erred in "repeatedly stopping and admonishing" him during his closing argument, without "legitimate purpose" and solely to "disrupt" his train of thought and the jury's attention. Appellant's brief at 19,

---

11. Specifically, Harris' brief makes allegations regarding actions taken by the prosecution, objections he allegedly made to those actions, and Judge Hughes' purported response, all without a single citation to the almost 1000 page transcript. Appellant's brief at 17.

21. Harris is entitled to no relief on this claim.

■ ¶ 25 In so concluding, we first note that Harris was permitted to give a two hour and fifteen minute closing argument. Rule 1925(a) Opinion at 8. Despite complaining that Judge Hughes "repeatedly" interrupted that closing, Harris only cites to four instances which he now claims require arrest of judgment. Appellant's brief at 19–(citing N.T. 1/26/07 at 82–83, 120, 124, 131). Our review of those four instances confirms that Judge Hughes' actions were entirely proper. As the Judge explained:

> The appellant sought to use his closing statement as a vehicle to testify. Closing statements are not evidence and the appellant cannot use his summation to testify and thereby avoid cross-examination. The appellant's conduct was so egregious that it was necessary to excuse the jury and to explain the concept of closing to him. Appellant had to be specifically directed to seek guidance from his experienced standby counsel. Despite these efforts, appellant continued to attempt to testify. Appellant was afforded every opportunity to make a proper closing statement. He cannot now complain because he was incapable of focusing on the evidence.

Rule 1925(a) Opinion at 9–10 (citations omitted). As Judge Hughes correctly concluded, "[t]he fact that an appellant decides to proceed with a *pro se* defendant does not absolve him of the responsibility to comply with procedural rules," and this claim is without merit. *Id.* at 8–9 (citing

*Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846, 852 (1989)).

### E. LIFTING THE *NOLLE PROSEQUI*

■ ¶ 26 As we noted above, when Harris stood trial for the second time, the jury convicted him of criminal conspiracy and possession of an instrument of crime, but deadlocked on the charge of third degree murder. The Commonwealth moved to *nolle prosequi* the murder charge, but later moved to lift the *nolle prosequi* after Harris was successful in securing a new trial on appeal.[12]

¶ 27 Harris' appellate argument regarding the *nolle prosse* fails for several reasons. Initially, we note with disapproval that Harris has again hampered our ability to assess his claim by failing to provide any citation to the portion of the certified record which contains the original motion for *nolle prosequi,* any objections he made to it, the order granting it, the subsequent request to lift it, or the order granting that request.

■ ¶ 28 Additionally, although Harris' Statement of Questions Involved asserts that it was error for the trial court to *lift* the *nolle prosequi,* the argument he actually makes in his brief is that it was error for Judge Hughes to *grant* the *nolle prosequi* in the first place. Appellant's brief at 3, 22. This violates Pa.R.A.P. 2116, which requires that the issues to be resolved must be included in the statement of questions involved.

■ ¶ 29 Finally, and most significantly, the error for which Harris provides supporting argument, i.e. that it was error to grant the *nolle prosequi,* Appellant's brief at 22 (citing *Rega, supra*),[13] was nev-

---

12. "A *nolle prosequi* is a voluntary withdrawal by the prosecuting attorney of proceedings on a particular bill or information, which can at anytime be retracted to permit revival of proceedings on the original bill or information." *Commonwealth v. Rega,* 856 A.2d 1242, 1245 n. 10 (Pa.Super.2004) (citing *Commonwealth v. Whiting,* 509 Pa. 20, 22–23, 500 A.2d 806, 807 (1985)).

13. Specifically, Harris asserts that it was error for Judge Hughes to grant the *nolle prose-*

er appealed.[14]  For these combined reasons, the instant allegation cannot form the basis for relief at this later stage of the proceedings.

## F.  PROSECUTORIAL MISCONDUCT

■  ¶ 30 Harris asserts that the prosecutor committed misconduct requiring the grant of a new trial when, during his closing argument, the prosecutor "likened the war in Iraq to the streets of Philadelphia, and the defendant a Muslim [sic]," and "further broadcast that young men are being killed on the streets everyday in Philadelphia and the appellant was having a war."  Appellant's brief at 23.  This argument is, *yet again*, wholly unaccompanied by citation to the certified record. Appellant's brief at 23–25.  We note, however, that in his earlier challenge to the denial of his recusal motion, Harris cited to a portion of the January 26, 2007 hearing during which the prosecution made the following statement on closing: "I was just outside the courtroom five minutes ago, looking at today's, the cover of the Daily News. It has all these headlines about people being shot and murdered and killed in Iraq. The one thing about ..." N.T.

1/26/07 at 147–148.[15]  Thus we will give Harris the benefit of this earlier citation, even if it was not made in support of the current argument, and find preserved an allegation that the prosecution committed misconduct with regard to this specific statement.

■  ¶ 31 In finding that a new trial is unwarranted on these grounds, we first note that although the prosecutor's closing involved additional comments regarding the murder rate in Philadelphia, Harris objected only to the above cited statement. We find that it alone, in the context of the case as a whole, does not amount to prosecutorial misconduct requiring a new trial.

[An] [a]ppellant is entitled to a new trial on the basis of prosecutorial misconduct only where the unavoidable effect of the prosecutor's comments was to prejudice the jurors, forming in their minds a fixed bias and hostility toward appellant, such that they were incapable of weighing the evidence objectively and rendering a true verdict.  The prosecutor's comments cannot be viewed in isolation, but must be considered in the context in which they were made.

*qui* without the Commonwealth providing a reason for the motion, and without holding a hearing on the motion, requiring Judge Hughes to infer the reason.  Appellant's brief at 22 (*citing Rega, supra; Commonwealth v. Reinhart*, 466 Pa. 591, 597, 353 A.2d 848, 851–852 (1976), *cert. denied*, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976)).  Both cases pertain to the entry, not the removal, of a *nolle prosequi*.

**14.**  As the *Rega* court explained, an order granting a Commonwealth motion for *nolle prosse* is immediately appealable under the combined authority of Pa.R.Crim.P. 585 ("Upon motion of the attorney for the Commonwealth, the court may, in open court, order a *nolle prosequi* of one or more charges notwithstanding the objection of any person."); Pa.R.A.P. 311(a)(9) ("An appeal may be taken as of right and without reference to

Pa. R.A.P. 341(c)" from, *inter alia* "[a]n order which is made appealable by statute or general rule."); and *Reinhart, supra*, (holding that an order granting a Commonwealth motion for *nolle prosequi* over a defendant's objection is immediately appealable).  *Rega*, 856 A.2d at 1245.

Here, Harris appealed the January 24, 2004 judgment of sentence resulting from the second trial on the ground that the trial court erred in allowing him to proceed *pro se* without conducting a full colloquy, *Commonwealth v. Harris*, No. 351 EDA 2004, unpublished memorandum at 2, 2005 WL 2917167 (Pa.Super. filed September 1, 2005), but he did not appeal the grant of the Commonwealth's motion to *nolle prosequi* the murder charge.

**15.**  The prosecutor was interrupted by Harris' objection.  N.T. 1/26/07 at 148.

*Commonwealth v. Williams,* 581 Pa. 57, 77–78, 863 A.2d 505, 517 (2004) (citations omitted). Here, although Harris asserts that the prosecutor's statement "exceeded the acceptable bounds and standards," and "overstepped the acceptable balance of the principles of summation," Appellant's brief at 23, 24, Harris never actually asserts that it prejudiced the jurors, or that it rendered them incapable of weighing the evidence objectively and rendering a true verdict. Examining the statement in the context of the closing as a whole, we find that the statement did not have such an effect, and, therefore, that a new trial is not necessary on this ground.

## G. BAIL MOTION

■ ¶ 32 Harris lastly asserts that Judge Hughes erred in allowing the prosecutor to introduce a bail motion which he himself had previously filed. Appellant's brief at 25.[16] The motion was, as Harris is forced to acknowledge, a document of his own creation. Thus his current argument that it should not have been admitted because it contains an error is perplexing.[17] Harris himself signed and filed the motion. Since Harris was the originator of the document, he should have proof read it for errors before filing it, and cannot now complain that it was introduced in the form that he himself approved.

¶ 33 For the foregoing reasons, we affirm the judgment of sentence.

¶ 34 Affirmed.

---

**16.** A copy of the motion is attached to Harris' appellate brief as Appendix VI.

**17.** Specifically, Harris claims the word "allegedly" was omitted. Appellant's brief at 25.