J. S64006/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| TORIS SYLVESTER GARNER, | : | No. 404 MDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, October 2, 2014,
in the Court of Common Pleas of Bradford County
Criminal Division at No. CP-08-CR-0000951-2013

BEFORE:  FORD ELLIOTT, P.J.E., WECHT AND FITZGERALD,* JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED NOVEMBER 06, 2015**

Toris Sylvester Garner appeals from the judgment of sentence of October 2, 2014, following his conviction of aggravated indecent assault without consent and indecent assault by forcible compulsion.[1]  We affirm.

The trial court recited the following facts of the case:

> Victim, K.J., age 18, walked a few blocks [from her grandparents' house] to a convenience store in Towanda, Pa on November 26, 2013, sometime after noon.  She had argued with her grandparents who she was living with and had packed a bag with her belongings.  She was standing outside the store, smoking a cigarette when the defendant pulled in driving a red Hummer and said something to her.  She approached him and he told her she was a beautiful girl and why was she frowning.  Victim explained she had argued with her grandparents.

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3125(a)(1) and 3126(a)(2), respectively.

Defendant then asked her if she wanted to go with him and smoke marijuana. She agreed and got in the vehicle. Defendant did not tell her his name, but told her people call him "T". Defendant also told her he had to meet someone near Wyalusing, PA to get the marijuana. He began driving in that direction. They had conversation about where defendant worked. Defendant told her he had a place she could stay and that he would help her with anything that she needed and buy her a pack of cigarettes. Defendant then asked her to perform oral sex on him. She replied no. Defendant told her if she would help him, he would help her. Defendant kept asking her to perform oral sex and she kept saying no. Victim told the defendant that she was not that kind of girl, that she was a church going girl and a virgin. She told the defendant this to make him believe she had no experience and to discourage him. Defendant pulled off at a scenic overlook and said he was meeting the guy to get the marijuana. No one ever appeared nor did defendant call anyone. Victim's grandfather called her on her cellphone and asked where she was as he was to pick her up [at] the convenience store. She told him she was with someone --a friend-- and would be there as soon as possible. Defendant had continued to ask victim to perform oral sex to which she continued to refuse. At one point in time, the defendant started to unbutton her pants and put his hand down her pants and penetrated with his fingers. Victim pushed his hand away. Defendant asked her to "give him a hand job" and she said no. Defendant unbuttoned his own pants, grabbed victim's hand and placed it on his penis. Victim pulled her hand away. Defendant then began driving back to Towanda and victim told him to take her home. Victim noticed that she had missed calls from her grandfather and called him. Defendant then pulled off onto a dirt road and victim became upset and kept asking him to take her home. Defendant told her that he wanted to have sex with her and she said no. Defendant then pulled down her pants, pulled down his pants and climbed over on her as she kept telling him to stop; he grabbed the back of her hair and

penetrated her vagina with his penis. He also pulled her shirt down and put his mouth on her breast prior to intercourse. Defendant then drove to a Wysox mini-market where victim asked him to drop her off. Victim asked Defendant for his telephone number. She asked for the telephone number so she could tell her grandfather and the police and give them the number. Victim's grandfather picked her up and drove her to the hospital.

Victim was cross examined thoroughly on the facts and on her inconsistencies in her testimony at trial from the preliminary hearing where (1) she had testified that her grandfather had called her after the first time the defendant had asked her for sex; and (2) she testified that at the scenic overlook defendant had pulled down her shirt and placed his mouth on her breast and then her grandfather called her. Victim never asked her grandfather for help or told him she was uncomfortable. Defendant never precluded her from talking on her phone, never locked the doors, never tried to leave and never tried to get the attention of others at the scenic overlook. Victim explained that at that point in time she wasn't really scared.

The sexual forensic assault nurse examiner reported there was no physical trauma upon examination, however, victim did complain of pain or tenderness in the vaginal area, on the back of her head and neck.

The Commonwealth also introduced the audio tape of the state police interview with the defendant. Defendant told police that he was trying to talk victim into staying with some of his friends in Tunkhannock until he got off work the next morning; he offered victim $100.00 for oral sex however he did not have $100.00; he described a lengthy conversation attempting to have her agree to sex; he stated that he did place his mouth on victim's breast, but that it was consensual; he further stated that victim consensually touched his penis while he drove; that he was rubbing her breasts and they

kissed. Defendant continued a diatribe regarding sex and attempting to talk victim into having sexual intercourse -- "using reverse psychology on her" and stating that all the acts were consensual; and that victim did not say "no" or "get off me" or fight him. Defendant did admit that he never called anyone to obtain marijuana and that he was not planning on obtaining marijuana; that he was trying to have sex with victim. Defendant admitted to placing his finger in victim's vagina.

Trial court statement, 6/10/15 at 2-4 (internal citations omitted).

The jury convicted appellant on April 23, 2014, of one count of aggravated indecent assault without consent and one count of indecent assault by forcible compulsion.[2] On October 2, 2014, the trial court sentenced appellant to an aggregate sentence of 66 to 156 months' imprisonment. Appellant filed post-sentence motions, which were denied on February 5, 2015. The issues raised by appellant in his post-sentence motions are identical to the issues raised on appeal. Appellant filed notice of appeal on February 27, 2015. The trial court ordered appellant to file a concise statement of errors complained of on appeal, which appellant filed on March 10, 2015, pursuant to Pa.R.A.P. 1925. The trial court then filed a statement in lieu of an opinion pursuant to Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

> I. WHETHER THE VERDICTS OF GUILTY WERE CONTRARY TO THE WEIGHT OF EVIDENCE?

---

[2] Appellant was acquitted of one count of rape, one count of aggravated indecent assault, two counts of indecent assault, and one count of sexual assault.

II. WHETHER THE TRIAL COURT ERRED IN SUBMITTING ANNOTATED VERDICT SLIPS TO THE JURY WITHOUT A REQUEST FOR SUCH ANNOTATION?

III. WHETHER THE TRIAL JUDGE ERRED IN REFUSING TO RECUSE HERSELF FROM PRESIDING OVER TRIAL?

Appellant's brief at 5.

The first issue appellant raises for our review is whether the jury's verdict is contrary to the weight of the evidence presented at trial. Our standard of review for determining whether a verdict is compatible with the weight of the evidence is well settled:

> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
> > Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing the trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error in judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias, or ill will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citations omitted).

Appellant's weight of the evidence argument is grounded in two separate theories: that the victim's testimony was inconsistent between the preliminary hearing and the trial and that the jury returned an inconsistent verdict by convicting appellant on two charges while acquitting him of five charges. Specifically, appellant notes that the victim's testimony was inconsistent due to differences in her testimony as to when incidents occurred during her encounter with appellant. (Appellant's brief at 10.)

A fact-finder is free to believe all, part, or none of the evidence presented. *Commonwealth v. Mosley*, 114 A.3d 1072, 1087 (Pa.Super. 2015) (citations omitted). This court cannot assume the task of assessing the credibility of the witnesses or evidence presented at trial, as that task is within the exclusive purview of the fact-finder. *Commonwealth v. Hankerson*, 118 A.3d 415, 420 (Pa.Super. 2015) (citations omitted). As the trial court noted, the jury found the victim to be credible when it convicted appellant of aggravated indecent assault and indecent assault. *See* trial court opinion, 2/2/15 at 2. We find that the trial court did not abuse its discretion when it denied appellant's claim, and therefore a new trial is not warranted.

Appellant also notes that the verdict in this case was inconsistent because appellant was acquitted of rape, sexual assault, aggravated indecent assault and two counts of indecent assault despite also being convicted of aggravated indecent assault and indecent assault. Both the United States Supreme Court and the Pennsylvania Supreme Court have cautioned against appellate review of inconsistent verdicts. "[T]he fact that the inconsistency [in the verdict] may be the result of lenity, coupled with the Government's inability to invoke review, suggests that inconsistent verdicts should not be reviewable." *Commonwealth v. Miller*, 35 A.3d 1206, 1209 (Pa. 2012), quoting *United States v. Powell*, 469 U.S. 57, 65 (1984). This court has noted that inconsistent verdicts, "while often

perplexing, are not considered mistakes and do not constitute a basis for reversal." ***Commonwealth v. McNeal***, 120 A.3d 313, 328 (Pa.Super. 2015) quoting ***Commonwealth v. Petteway***, 847 A.2d 713, 718 (Pa.Super. 2004) (citations omitted).

The jury returned a guilty verdict for aggravated assault without consent and indecent assault forcible compulsion while acquitting appellant of rape, aggravated indecent assault, sexual assault and two counts of indecent assault. We find no abuse of discretion in such a conclusion and therefore find that appellant's first issue has no merit.

Appellant's second issue addresses whether the trial court erred by providing the jury with annotated verdict slips during its deliberation. Specifically, appellant avers that the trial court improperly provided the jury with annotations on the verdict slip that equated to, "(1) a transcript of testimony and (2) a copy of the Information, as each notation contained facts as presented through trial testimony as listed in the Information." (Appellant's brief at 14.)

The Pennsylvania Rules of Criminal Procedure prohibit a jury from having the following items in its possession during deliberations: (1) a transcript of any trial testimony; (2) a copy of any written or otherwise recorded confession by the defendant; (3) a copy of the information or indictment; and (4) any written jury instructions, except as otherwise permitted by the Rules. Pa.R.Crim.P. 646(C). Our supreme court has found

that in cases where there are separate and distinct charges against a defendant, a trial court may, after conferring with counsel, include identifying notations on the verdict slip, so long as the notations are neutral and are not suggestive or prejudicial when viewed in the context of the court's instructions to the jury. *Commonwealth v. Kelly*, 399 A.2d 1061 (Pa. 1979), *appeal dismissed*, 444 U.S. 947 (1979).

In *Commonwealth v. Fisher*, 863 A.2d 574, 577 (Pa.Super. 2004), this court, analyzing *Kelly* using Pa.R.Crim.P. 646, stated that annotations on a jury slip were appropriate because the annotations did not refer to evidence introduced at trial and the annotations were "completely neutral" and served to distinguish between two different charges. The trial judge in *Fisher* handwrote the terms "bodily injury" and "serious bodily injury" on the verdict slips in order to assist the jury in differentiating the two charges. *Id.* at 576. This court stated that the judge's handwritten notations were neither suggestive nor prejudicial, and they did not provide the jury with any written instructions regarding legal issues. *Id.* at 577. Moreover, as the trial court noted, the Rules of Criminal Procedure permit a jury to have access to the trial judge's written instructions pertaining to the elements of the offense charged. Pa.R.Crim.P. 646(B).

In the instant case, the verdict slips used by the jury are reproduced here:

We find the Defendant, Toris Sylvester Garner, (guilty or not guilty)[3] of Aggravated Indecent Assault Without Consent.

We find the Defendant, Toris Sylvester Garner, (guilty or not guilty) of Indecent Assault by Forcible Compulsion (hand touching penis).

We find the Defendant, Toris Sylvester Garner, (guilty or not guilty) of Aggravated Indecent Assault by Forcible Compulsion.

We find the Defendant, Toris Sylvester Garner, (guilty or not guilty) of Rape.

We find the Defendant, Toris Sylvester Garner, (guilty or not guilty) of Indecent Assault Without Consent (sexual intercourse).

We find the Defendant, Toris Sylvester Garner, (guilty or not guilty) of Indecent Assault by Forcible Compulsion (sexual intercourse).

We find the Defendant, Toris Sylvester Garner, (guilty or not guilty) of Sexual Assault.

Docket #30. The trial judge included annotations for each of the indecent assault charges, which were typed directly onto the verdict slips before they were provided to the jury. (*Id.*) Much like the verdict slips in *Fisher*, the verdict slips in this case do not contain any suggestive or prejudicial material, nor do they provide the jury with any additional instructions pertaining to any legal issues. The trial judge's annotations were completely neutral and only served to provide the jury with a means of differentiating

---

[3] A blank space was provided on the verdict slip with the instructions for the jury foreperson to write guilty or not guilty.

between the three separate indecent assault charges against appellant. Therefore, appellant's second issue is without merit.

The third and final issue appellant raises for our review is whether the trial judge, the Honorable Maureen T. Beirne, erred by failing to recuse herself from this case. Appellant avers that Judge Beirne should have been disqualified from presiding over his criminal trial because she and the Bradford County District Attorney, Daniel Barrett, Esq., are first cousins and because Judge Beirne acquired personal knowledge of the facts of appellant's criminal case when she presided over appellant's custody case.

The standard of review for the recusal of judges is as follows:

> Our standard of review of a trial court's determination not to recuse from hearing a case is exceptionally deferential. We recognize that our trial judges are "honorable, fair, and competent," and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially.
>
> > The party who asserts that a trial judge should recuse bears the burden of setting forth **specific** evidence of bias, prejudice, or unfairness. "Furthermore, a decision by the trial court against whom the plea of prejudice is made will not be disturbed absent an abuse of discretion."

*Commonwealth v. Postie*, 110 A.3d 1034, 1037 (Pa.Super. 2015), quoting *Commonwealth v. Harris*, 979 A.2d 387, 391-392 (Pa.Super. 2009) (citations omitted) (emphasis added).

We first address whether the fact that Judge Beirne and District Attorney Barrett are first cousins is grounds for Judge Beirne's disqualification from presiding over the present case. The Pennsylvania Code of Judicial Conduct prohibits a judge from presiding over a case in which a person, "within the third degree of relationship" to the judge is acting as a lawyer in the proceeding. Pa. Code of Jud. Conduct 2.11(A)(2)(b). The Code defines "third degree of relationship" as, "great-grandparent, grandparent, parent, uncle, aunt, brother, sister, child, grandchild, great-grandchild, nephew, and niece." *Id.* at Terminology.

Since first cousins are not within the third degree of relationship as defined by the Code of Judicial Conduct, we find that Judge Beirne was not required to recuse herself from presiding over appellant's criminal trial. Furthermore, we also note that appellant failed to provide any evidence of bias, prejudice, or unfairness that resulted from the familial relationship between Judge Beirne and District Attorney Barrett.

We shall now address whether Judge Beirne should have recused herself from appellant's criminal trial because she had firsthand knowledge of the facts at issue due to her presiding over appellant's custody trial. The Code of Judicial Conduct requires a judge to disqualify him or herself from a proceeding if the judge has, "personal knowledge of facts that are in dispute in the proceeding." Pa. Code of Jud. Conduct Rule 2.11(A)(1).

In the instant case, appellant has not alleged any specific incidents of prejudice, bias, or unfairness resulting from Judge Beirne presiding over his custody case. Appellant admits that he has **no knowledge** of whether Judge Beirne was made aware of the facts in dispute in his criminal trial during his custody dispute. (Appellant's brief at 17.) Appellant offers speculation that Judge Beirne's possible knowledge of the facts in his criminal case influenced evidentiary rulings before and during the trial. (**See id.**) Without knowledge of whether Judge Beirne was even made aware of facts in dispute during appellant's custody trial, appellant has not satisfied the standard established by this court in **Postie**; therefore, this claim has no merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2015

- 13 -