J-A05009-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.V. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.K. | : | No. 2918 EDA 2017 |

Appeal from the Order Entered August 9, 2017
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  No. 2016-08685

BEFORE:   DUBOW, J., MURRAY, J., and STEVENS*, P.J.E.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 20, 2018**

Appellant, J.V. ("Father"), appeals from the August 9, 2017 Order, which, *inter alia*, denied in part Father's Complaint for Custody and awarded primary physical custody of A.V. ("Child") to Appellee, C.K. ("Mother") and partial physical custody of Child every other weekend and one weeknight dinner per week to Father.  Upon careful review, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

The relevant factual and procedural history is as follows.  Mother and Father are parents to Child, who was born in April of 2013.  Mother and Father were never married, but lived together in a home owned by Father's mother ("Paternal Grandmother") until July of 2016.

In the first few months of 2016, the relationship between Mother and Father began to deteriorate.  On April 29, 2016, Father filed a Complaint for Custody seeking primary physical custody and shared legal custody of Child.

_____

* Former Justice specially assigned to the Superior Court.

On the same day, Father filed a Petition for Special Relief Requesting Mental Examination Pursuant to Pa.R.Civ.P. 1915.8 ("Petition for Mental Examination"), asking the court to compel Mother to submit to a mental health evaluation. On June 6, 2016, Mother filed an Answer to Father's Complaint for Custody requesting that Father's Complaint be denied and seeking primary physical custody and shared legal custody of Child.

On July 8, 2016, Mother filed a Protection from Abuse ("PFA") Petition against Father, which the trial court later denied.

On July 9, 2016, Father removed the electric circuit breakers from the home that he shared with Mother and Child, leaving the home without electricity. Father also ransacked the home and overturned the beds. Mother contacted the police and Mother and Child began living temporarily with her father ("Maternal Grandfather"). Father stayed with Paternal Grandmother.

On or around July 16, 2016, Mother agreed to allow Child to stay overnight with Father from Saturday until Sunday. Father did not return Child on Sunday. Instead, on July 18, 2016, Father filed an Emergency Petition for Custody and, on July 19, 2016, Mother filed an Answer and New Matter to Father's Emergency Petition.

On July 21, 2016, after a telephone conference, the trial court concluded that Father's Emergency Petition for Custody was not an emergency, ordered Father to return Child to Mother immediately, and awarded Mother primary physical custody of Child and Father partial physical

custody of Child every other weekend until further order of the court. On August 1, 2016, Father filed an Emergency Petition for Reconsideration, which the trial court denied.

On November 28, 2016, the trial court held a hearing on Father's April 29, 2016 Petition for Mental Examination. Father presented himself as the sole witness. Father testified that while he lived with Mother, her behavior was erratic and that she would be happy one minute, but sad or angry the next minute. N.T. MH Hearing, 11/28/16, at 14. He further testified that Mother constantly accused him of cheating and looked through his cell phone. *Id.* at 15. Father also testified that on one occasion, he took Mother's cell phone to look through it and Mother punched, kicked, and scratched him to get the cell phone back*. Id.* Father stated that he had observed Mother walk up to Child, nudge Child with her leg, and laugh when Child fell over. *Id.* at 22. He also told the court that Mother stole his mail, followed him around the house recording him, and would occasionally drink heavily and leave open vodka bottles around the house within Child's reach. *Id.* at 28-29.

On cross-examination, Father testified that he smoked marijuana in the past, and that when Mother and Father were in a relationship, they would smoke marijuana together. *Id.* at 51-52. Father also acknowledged that when Mother accused him of smoking marijuana at work, he responded with a text message saying, "Um, I'm not scared of smoking at work." *Id.* at 40-41, 51.

On January 13, 2017, the trial court denied Father's Petition for Mental Examination.

On May 15, 2017, the trial court held a two-day hearing on Father's Complaint for Custody, Mother's Answer, and related filings. Father presented testimony from himself, the mother of his two older children, and Mother's brother. Mother presented testimony from herself and Maternal Grandfather.

Father testified that he has been employed as a parking valet for twenty-two years and works mainly nights and weekends. N.T. Custody Hearing, 5/15/17, at 52-54. Father testified that he has a flexible schedule, and if the trial court granted him shared physical custody of Child, he would either not work while Child was in his care or ask Paternal Grandmother and his sister to help with childcare. *Id.* at 56, 135. Father currently lives in a home that has a bedroom set up for Child. *Id.* at 136.

Father testified that Mother enrolled Child in preschool without his knowledge and he is opposed to Child being in preschool unless Mother is working full time. *Id.* at 64, 191-92. On redirect examination, Father stated he would consider sending Child to preschool "when necessary" if he had physical custody of Child fifty percent of the time. *Id.* at 211.

Father further testified that Child is very upset that she only sees Father every other weekend. *Id.* at 79-80. Father explained that Child does not want to leave his house, and hides and cries when it is time to leave. *Id.* at 80, 107. Father testified that he has partial physical custody of his

- 4 -

two older children from a previous relationship, and Child has not been able to see her half-siblings or other extended family members with the limited visitation schedule. *Id.* at 121, 127, 129.

Father also stated that, despite the Interim Custody Order only granting Father visitation with Child on alternating weekends, Mother allowed him extra visitation including a dinner visit every other week, a Thanksgiving visit, and a visit on Father's birthday. *Id.* at 92, 96, 174. Father conceded that when he has asked for additional time with Child, Mother has been accommodating approximately seventy percent of the time. *Id.* at 170. Father acknowledged that he has not requested phone calls with Child. *Id.* at 107. Father stated that since they have been living apart, Mother does not inform him of or invite him to doctor or dentist appointments for Child. *Id.* at 98-99.

Finally, Father testified about his contentious relationship with Mother. Father admitted that after Mother filed the PFA Petition against him, he removed the electric circuit breakers from their shared home. *Id.* at 88, 180, 202. He also admitted to yelling at Mother in front of Child, spitting on Mother, and pulling Mother's hair. *Id.* at 201, 204.

Mother testified that she currently lives in an apartment with Child, Child's 16-year-old half-brother, and Child's 13-year-old half-sister. *Id.* at 237, 253. Child shares a bedroom and bunk bed with her older half-sister, and spends a lot of time with both half-siblings. *Id.* at 236-238. Child's half-sister babysits her occasionally for brief periods. *Id.* at 236. Mother

works as a dog walker and is able to take Child to work with her. *Id.* at 18, 254.

Mother further testified that she worked at the Malvern School in the Summer of 2016 and enrolled Child, who enjoyed preschool and learned a lot. *Id.* at 228-229. As an employee, Mother received a discount on Child's tuition. *Id.* at 230-31. Mother testified that she had to take a lot of time off due to the custody proceedings and scheduled hearings, lost her position at the Malvern School, and was unable to afford full-price tuition. *Id.* In November 2016, Mother enrolled child in another preschool three days per week, but Child stopped attending in 2017 because Father's child support payments were falling behind and Mother could no longer afford the preschool tuition. *Id.* at 233.

Mother testified that, when getting ready for visits with Father, Child often tells her she does not want to go with Father. *Id.* at 256. Mother stated that after one visit, Child returned and told her, "Daddy said that you're a stupid bitch." *Id.* Mother testified, "I tell her that, you know, that's her dad and she has to see him. I mean, but if she had her way, she would rather stay with me. I think she's better off how it is now, she's happy." *Id.* at 256.

Mother also testified about her contentious relationship with Father. Mother testified that Father spit in her face and pulled her hair in front of Child; Child was frightened and crying. *Id.* at 247. Mother testified that these episodes happened "almost every day . . . [o]r every other day" for

over a year. *Id.* at 247-48. Mother testified that on Christmas of 2015, after an argument, she returned home from Maternal Grandfather's house with Child and her half-siblings. Father locked them out of the house, but eventually let them in, and they argued in front of Child for over an hour. *Id.* at 248-51. Mother testified that, when they were living together, Father would confiscate her government assistance food stamp card so that Mother could not buy food for the children, and then order pizza and eat it in front of them without sharing. *Id.* at 241-42. Mother testified that Father removed the electric circuit breakers from their home without warning, immediately leaving Mother and Child without suitable housing. *Id.* at 223-25. Finally, Mother testified that Father frequently threatened her, "Give me 50-50 [custody] or else." *Id.* at 245.

On August 9, 2017, the trial court entered an Order and Opinion, which, *inter alia*, denied in part Father's Custody Petition and awarded primary physical custody of Child to Mother and partial physical custody of Child to Father on alternating weekends and one weeknight dinner per week.

Father timely appealed. Father and the trial court both complied with Pa.R.A.P. 1925.

**ISSUES ON APPEAL**

Father raises the following issues on appeal:

1. Did the court err in denying [Father]'s Petition [for Mental Evaluation] for [Mother]?

2. Did the court err in finding that there was no evidence that Mother suffered from any mental health disorder given the testimony presented at the hearing for special relief?

3. Did the court err in refusing to hear testimony concerning Mother's violence towards her older children because the evidence was relevant in order to assess whether Mother needed a Mental Health Evaluation?

4. Was the court's finding[] that Father "frequently" spits on Mother supported by the evidence?

5. Was the court's finding that Father "frequently" pulls Mother's hair supported by the evidence?

6. Was the court's finding that Mother was forced to stop [Child] from attending Malvern [preschool] because she could not afford the tuition, supported by the evidence, where on cross-examination Mother admitted she stopped [Child] from attending the school because of the actions of the employees of the school?

7. Did the court's custody order of August 9, 2017 in its entirety support awarding Father only limited/partial custody of one overnight every two weeks?

Father's Brief at 18-19 (reordered for ease of disposition; some capitalization omitted).

**STANDARD AND SCOPE OF REVIEW**

When reviewing child custody matters, our paramount concern is the best interests of the child. *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006). "The best interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." *Id.* (quotation and citation omitted).

This Court reviews a custody determination for an abuse of discretion. *In re K.D.,* 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." *Id.* (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." *Id.* (citation omitted).

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad:

> . . . we are not bound by deductions and inferences drawn by the trial court from the facts found, nor are we required to accept findings which are wholly without support in the record. On the other hand, our broad scope of review does not authorize us to nullify the fact-finding function of the trial court in order to substitute our judgment for that of the trial court. Rather, we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. Further, on the issues of credibility and weight of the evidence, we defer to the findings [of] the trial judge. Additionally, appellate interference is allowed only where it is found that the custody order is manifestly unreasonable as shown by the evidence of record.

*Saintz, supra* at 512 (quotation and citation omitted).

**THE CHILD CUSTODY ACT**

The Child Custody Act ("the Custody Act"), 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. *E.D. v. M.P.,* 33 A.3d 73, 77 (Pa. Super. 2011). The Custody Act requires a trial

- 9 -

court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D. v. S.A.R.**, 96 A.3d 396, 401 (Pa. Super. 2014); **see also** 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013).[1]

_____

[1] 23 Pa.C.S. § 5328(a) provides:

> **(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.

*(Footnote Continued Next Page)*

*(Footnote Continued)* ⸻

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

**Petition for Mental Examination**

Father's first three issues pertain to the denial of his Petition for Mental Examination. He avers in the first two issues that the trial court abused its discretion when it denied Father's Petition for Mental Examination and found that Father failed to present sufficient evidence that Mother suffered from a mental health disorder. Father's Brief at 26. In his third issue, Father avers that the trial court erred when it limited testimony of Mother's violence toward her older children during the hearing on the Petition for Mental Examination. *Id.*

In a custody case, pursuant to Pa.R.C.P. No. 1915.8, the trial court "**may** order the child(ren) and/or any party to submit to and fully participate in an evaluation by an appropriate expert or experts." Pa.R.C.P. No. 1915.8(a) (emphasis added). It is clearly within the trial court's discretion whether to order a psychological evaluation. *Jordan v. Jackson*, 876 A.2d 443, 455 (Pa. Super. 2005).

In its Order denying the Petition, the trial court opined:

Father failed to present testimony which proved by a preponderance of the evidence that Mother was suffering from a mental health condition that would warrant the [c]ourt ordering a mental health exam. Nevertheless, the [c]ourt notes that the behavior exhibited by Mother, according to Father's testimony and petition, may constitute immature, or possibly, irresponsible parenting. However, the [c]ourt does not find that it rises to the level of concern to warrant a mental health examination order.

Trial Court Order and Opinion, dated 1/13/17, at 7.

Our review of the record supports the trial court's conclusions. While Mother's behavior, if as described by Father is true, is concerning, the record evidence does not support his contention that she suffers from a mental health disorder. Accordingly, the trial court did not abuse its discretion when it declined to order a psychological exam for Mother.

In Father's third issue, he contends that the trial court erred when it precluded Father from testifying concerning Mother's violent behavior toward her older children. Father's Brief at 29. Father argues that this testimony was relevant to determine whether Mother's behaviors necessitated a mental health evaluation. *Id.* However, Father fails to provide a citation to the place in the record where the matter referred to appears.

It is well-settled that an appellant must provide this Court with "proper references to the specific place in the certified record at which challenged testimony appears." *In re Child M.*, 681 A.2d 793, 799 (Pa. Super. 1996). Our Rules of Appellate Procedure make clear, "[i]f reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c). *See also Hayward v. Hayward*, 868 A.2d 554, 558 (Pa. Super. 2005) (observing it is not the duty of this Court to "scour the record" and "act as the appellant's counsel" and declining to do so). This Court has held that when an

allegation is unsupported by any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal. ***Commonwealth v. Harris***, 979 A.2d 387, 393 (Pa. Super. 2009).

In arguing his third issue, Father fails to provide citation to the record as required by Pa.R.A.P. 2119(c). Accordingly, we are unable to determine whether error exists. This issue is, thus, waived.

## **Trial Court Findings**

In his next three issues, Father asserts that several of the trial court's findings are unsupported by the record. Father's Brief at 30. Specifically, Father argues that, despite his admission that he spit on Mother and pulled her hair, the trial court's finding that this occurred "frequently" is unsupported by evidence in the record. ***Id.*** Father also argues that the trial court's finding that Child stopped attending preschool because Mother could not afford tuition is unsupported in the record. ***Id.*** Our review of the record reveals that these issues lack merit.

As stated above, we review Father's arguments particularly recognizing that "we are bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." ***Saintz, supra*** at 512. Moreover, on the issues of credibility and weight of the evidence, we defer to the findings of the trial judge. ***Id.***

- 14 -

Instantly, Father admitted during his testimony that he spit on Mother and "may have pulled her hair in self-defense." N.T. Custody Hearing, 5/15/17, at 204. Mother testified to one incident when Father and she were arguing, and Father spit in her face and said, "I spit in your face because I hate you." *Id.* at 247. Mother also testified to another incident that occurred when Father was upset that she would not let him see her phone: "He tried to grab my phone. He pulled my hair and pushed me into the refrigerator." *Id.* When asked how often episodes like this occurred, Mother replied, "[l]ike I said, almost every day. Or every other day" for over a year. *Id.* at 248. The trial court found Mother's testimony to be credible. Trial Court Opinion, dated 10/5/17, at 12.

Clearly, Mother's testimony that the episodes occurred almost daily, which the trial court believed, supports the trial court's finding that Father "frequently" spit on Mother and pulled Mother's hair. As the record supports the trial court's finding, Father's claims lack merit.

Father next argues that the trial court's finding that Child stopped attending preschool at the Malvern School because Mother could not afford tuition is unsupported in the record because Mother also testified that she was unhappy with the actions of the employees at the school. *Id.* at 32-33. This argument is nonsensical.

On direct examination, Mother testified that there were "a lot of reasons" why Child stopped attending Malvern preschool, including that once

she no longer worked there, and no longer received reduced tuition, she could not afford to send Child to school there. N.T. Custody Hearing, 5/15/17, at 230-31. On cross-examination, Mother acknowledged that, "there was this one incident" where Mother was unhappy with the way Child was treated by employees at the preschool. *Id.* at 259. From this testimony, the trial court made the finding that: "Mother testified that she was forced to stop sending [Child] to the Malvern [p]reschool because she could not afford the tuition payments." Trial Court Order and Opinion, filed 8/9/17, at 9.

Mother's testimony on direct examination supports the trial court's finding that Mother could not afford tuition payments. The fact that Mother **also** testified that she was unhappy with one incident at the school is of no consequence to the trial court's finding. The record supports the trial court's finding, and, therefore, Father's claim lacks merit.

## Custody Order

In his final issue, Father avers that the trial court's August 9, 2017 Order in its entirety fails to support awarding Father only partial physical custody on alternating weekends. Father's Brief at 19; Father's 1925(b) Statement at 2.

Rule 1925(b) requires an appellant to "concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge." Pa.R.A.P. 1925(b)(4)(ii). This Court may

- 16 -

find waiver where a Rule 1925(b) Statement is too vague. ***In re A.B.***, 63 A.3d 345, 350 (Pa. Super. 2013). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." ***Id***. (citation omitted). A 1925(b) Statement that is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no 1925(b) Statement at all. ***Id.***

Here, the trial court was unable to specifically address Father's issue, stating that Father did "not provide the court with enough specificity to address Father's claim." Trial Court Opinion, dated 10/5/17, at 11. We agree. This issue, as framed, is overly vague. While it signifies Father's clear unhappiness with the outcome of the custody proceedings, it fails to provide any specific context with which a purported error or abuse of discretion could be addressed. Because the trial court was unable to address it, we conclude that Father has waived this issue on appeal.

In conclusion, a review of the record supports the trial court's findings and reveals that the court properly considered Child's best interests when it denied in part Father's Complaint for Custody and awarded Mother primary physical custody of Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:4/20/18