J-A28039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HELEN SALIMAN OGIOBA, AS EXECUTRIX OF THE ESTATE OF LEWIS OGIOBA | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : | |
| | : : | No. 606 EDA 2017 |
| DR. CHIRAAG GUPTA AND NORTHAMPTON COUNTY HOSPITAL COMPANY, LLC | : : : : | |

Appeal from the Judgment Entered January 12, 2017
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  C-0048-CV-2013-07626

BEFORE:  GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED APRIL 23, 2018**

Appellant, Helen Saliman Ogioba, as Executrix of the Estate of Lewis Ogioba, appeals the January 12, 2017 Judgment entered in favor of Appellees, Dr. Chiraag Gupta ("Dr. Gupta") and Northampton County Hospital Company, LLC ("Northampton").  Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  On August 2, 2011, after playing basketball, 15-year-old Lewis Ogioba ("Decedent") presented at Easton Hospital Emergency Room[1] at 8:00 P.M. with symptoms including shortness of breath, fatigue, weakness, and coughing up copious

_____

[1] At the time of the incident, Appellee Northampton owned, operated and controlled the facility known as Easton Hospital.

amounts of sputum. Dr. Gupta treated Decedent for asthma, administered Albuterol medication, and discharged Decedent after three hours of observation. In the early morning hours of August 3, 2011, Decedent suffered cardiopulmonary arrest and returned to the hospital in an ambulance, where medical staff pronounced him dead at 3:00 A.M. An autopsy later revealed that Decedent suffered from a heart condition called hypertrophic cardiomyopathy, a rare genetic disorder that causes the muscles inside the heart to thicken.

On January 2, 2014, Appellant filed a Complaint bringing Wrongful Death and Survival Actions against Appellees. On August 21, 2014, Appellant filed a First Amended Complaint. On February 3, 2015, Appellant filed a Second Amended Complaint, and Appellant filed a Third Amended Complaint on April 20, 2015. On June 26, 2015, Dr. Gupta filed a Motion for Partial Judgment on the Pleadings ("Motion for Partial Judgment"), arguing that Appellant's Third Amended Complaint added, *inter alia*, new causes of action sounding in negligence after the statute of limitations expired. On August 13, 2015, the trial court granted the Motion for Partial Judgment and struck multiple subparagraphs in Appellant's Third Amended Complaint that stated new theories of negligence.

Both Appellant and Appellees filed numerous motions *in limine* ("MIL"). Relevant to this appeal, the trial court granted the following motions: 1) MIL to Preclude Plaintiff's Experts from Testifying as to Acts of Negligence Which Have Been Stricken from Third Amended Complaint; 2) MIL to Preclude

Plaintiff from Projecting Lost Future Earnings without a Deduction for Personal Maintenance Expenses; 3) MIL to Preclude Plaintiff's Claim of Purported "Spoliation" of Evidence; and 4) MIL to Preclude Plaintiff from Presenting a Claim of Solatium Damages[2] or for the Non-Pecuniary "Loss of Consortium" of [Decedent].

The jury trial commenced on January 19, 2016, and ended with a verdict in favor of Appellees on January 28, 2016. Appellant filed a timely Post-Trial Motion, which the trial court denied on September 2, 2016. Appellant entered Judgment on January 12, 2017.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Whether [Appellant]'s Third Amended Complaint added more allegations of [Appellee] Dr. Chiraag Gupta's medical negligence as new causes of action after the running of the applicable statute of limitations, when such new allegations were only an amplification of existing causes of action[,] which had been timely pleaded?

2. Whether [Appellant]'s medical experts' testimony should have been limited to the "four corners" of the Third Amended Complaint (as limited by the August 13, 2015 Order) rather than the "four corners" of their respective expert reports, which addressed the precluded medical negligence issues that

_____

[2] "Solatium, or solace, describes a type of monetary damages awarded the decedent's survivors to recompense them for their feelings of anguish, bereavement, and grief caused by the fact of the decedent's death." *Sinn v. Burd*, 404 A.2d 672, 675 n.3 (Pa. 1979).

were only an amplification of existing causes of action which had been timely pleaded?

3. Whether witness testimony using certain words or medical terms or symptoms not specifically pleaded in the Third Amended Complaint (as limited by the August 13, 2015 Order) should have been prohibited at trial, thereby precluding [Appellant]'s lay witnesses from testifying as to the Decedent's symptoms on 8/2/11 and precluding [Appellant]'s counsel from cross-examining [Appellee] Dr. Chiraag Gupta as to relevant medical terms or symptoms to which he testified on direct examination?

4. Whether [Appellee] Northampton Hospital Company, LLC's failure to preserve the hospital security video(s) from the night of August 2, 2011 warranted an adverse inference instruction and allowed testimony on direct examination of [Appellant]'s witnesses as to the presence of video cameras and the likely existence of surveillance video, especially pertaining to the apparent condition of the Decedent at the time of discharge from the hospital?

5. Whether [Appellant] could present expert testimony projecting [Decedent]'s lost future earnings without a deduction for personal maintenance expenses in light of the MCARE Act's omission of any such requirement in 40 P.S. § 1303.510 expressly addressing the reduction of such damages to present value?

6. Whether [Appellant] should have been allowed to present the testimony of [Decedent]'s parents regarding their emotional and psychological loss including companionship, society, and comfort as solatium damages, where the courts of the Commonwealth have held that such damages are includible as a loss of services recoverable in a suit for wrongful death under 42 [Pa.C.S.] § 8301?

Appellant's Brief at 7-10.

In her first issue, Appellant avers that the trial court abused its discretion when it struck additional acts of negligence raised in her Third Amended Complaint. Appellant's Brief at 23. Appellant acknowledges that her counsel filed the Third Amended Complaint after the two-year statute of

limitations expired but argues that the additional acts of negligence did not state new causes of action, but merely amplified the allegations in the original Complaint that were timely pleaded. *Id.* at 23.

The decision of whether to allow a party to amend a pleading is within the sound discretion of the trial court, and we will not disturb that decision on appeal absent a clear abuse of discretion. *Romah v. Hygienic Sanitation Co.*, 705 A.2d 841, 857 (Pa. Super. 1997). Pa.R.C.P. No. 1033 provides that a party, by leave of court, may amend a pleading at any time. Pa.R.C.P. No. 1033(a). The right to amend a pleading is to be construed liberally. *Del Turco v. Peoples Home Sav. Ass'n*, 478 A.2d 456, 464 (Pa. Super. 1984). However, if amendment introduces a new cause of action, it is not permitted after the running of the statute of limitations. *Id.*

Our Supreme Court has defined "cause of action" in negligence as "[t]he negligent act or acts which occasioned the injury." *Cox v. Wilkes-Barre Ry. Corp.*, 6 A.2d 538, 538 (Pa. 1939). This Court has held "[a] new cause of action does not exist if plaintiff's amendment merely adds to or amplifies the original complaint[.]" *Junk v. E. End Fire Dep't*, 396 A.2d 1269, 1277 (Pa. Super. 1978) (citations omitted). However, a new cause of action **does** exist if the amendment "proposes a different theory or a different kind of negligence than the one previously raised or if the operative facts supporting the claim are changed." *Id.*

Instantly, we recognize that a party must commence Wrongful Death and Survival actions within two years of the time the cause of action

- 5 -

accrued. *See* 42 Pa.C.S. § 5524(2); 42 Pa.C.S. § 5502(a); *Moyer v. Rubright*, 651 A.2d 1139, 1141 (Pa. Super. 1994). It is undisputed that Appellant's counsel filed the Third Amended Complaint on April 20, 2015, almost four years after the claim arose and approximately twenty months after the statute of limitations expired. Accordingly, the only question is whether the Third Amended Complaint introduced new negligent acts as opposed to amplification of existing negligent acts.

Appellant's original Complaint contained multiple allegations of negligence against Dr. Gupta, including, in relevant part, that he: 1) "failed to follow conventional medical protocol, monitoring and testing for signs of cardiac distress, specifically, by ordering [an] echocardiography[;]" 2) failed to order a routine chest X-ray; and 3) failed to keep Decedent in the hospital overnight monitored by bedside equipment hooked up to his pulmonary and cardiovascular systems. *See* Complaint, 1/2/14, ¶¶47, 67.

In the Third Amended Complaint, filed after the statute of limitations had expired, Appellant asserted additional averments of negligence. The trial court permitted multiple amendments, but determined the following averments to be stricken with prejudice for stating new theories of negligence against Appellee and violating the statute of limitations:

1) failing to take a complete and adequate history;

2) failing to administer the proper diagnostic tests;

3) failing to obtain a peak flow measurement;

4) failing to perform a cardiac work-up;

5) failing to re-evaluate Decedent [] after he requested a wheelchair;

6) failing to detect ventricular bigeminy on the monitor strips;

7) failing to recognize arrhythmia;

8) treating the Decedent [] with nebulizers despite the fact that he was symptomatic for congestive heart failure; and

9) failing to conduct additional diagnostic tests.

*See* Third AmendedComplaint, 4/20/15 ¶¶43, 50.

Appellant cites ***Connor v. Allegheny General Hosp.,*** 461 A.2d 600, (Pa. 1983), to support his argument that the averments stricken by the trial court merely amplified existing allegations of negligence. In ***Connor,*** the appellant underwent a barium enema after presenting at the hospital with abdominal distress. During and after the procedure, the barium solution leaked out of a perforation in the appellant's colon into her abdominal cavity, necessitating multiple additional surgeries. ***Id.*** at 601. The appellant's original complaint alleged that the hospital and treating physicians were negligent, *inter alia*: 1) in perforating the sigmoid colon during the performance of a barium enema procedure; 2) in perforating the sigmoid colon and causing extravasation of the barium into the abdominal cavity causing barium peritonitis; and 3) **in otherwise failing to use due care and caution under the circumstances**. ***Id.*** (emphasis added). The appellant amended her complaint, after the statute of limitations, by adding, *inter alia*, the following allegation:

> After it became apparent or should have become apparent . . . that barium with accompanying intestinal contents had extravasated into the abdominal cavity, the necessary laparotomy and cleansing of the abdominal cavity . . . was delayed improperly causing the barium and intestinal contents to remain within the abdominal cavity causing extensive peritonitis, formation of adhesions and a pericolic absess.

*Id.*

This Court held that the statute of limitations barred the proposed amendment because it sought to add new allegations of negligent acts by proceeding on a different negligence theory. However, our Supreme Court reversed and held that, in light of the original complaint's broad and catch-all allegation that the appellee was negligent, "in otherwise failing to use due care and caution under the circumstances[,]" the appellant's proposed amendment did not change the cause of action but merely amplified it. *Id.* at 602.

Instantly, Appellant argues that the language "failed to follow conventional medical protocol for the situation, by adequately monitoring and testing for signs of cardiac distress[,]" as contained in the original Complaint, is broad enough under **Connor** to allow Appellant to amend the Complaint after the running of the statute of limitations. However, as the trial court astutely opines, this argument is unpersuasive because Appellant fails to recognize that that the language "failed to follow conventional medical protocol" is limited by the subsequent language "specifically, by ordering [an] echocardiography." **See** Order and Reasons, dated 8/13/15.

Accordingly, the language is not broad, but rather refers to a specific medical test, and Appellant's argument fails.

We are constrained to agree with the trial court that the averments stricken by the court are new allegations of negligence and not merely amplification of existing allegations; the new allegations address Dr. Gupta's failure to engage in specific medical tests and diagnoses, which are separate and distinct from the original allegations of Dr. Gupta's negligence. Accordingly, we find no abuse of discretion and Appellant's first issue warrants no relief.

Appellant's second issue is whether the trial court abused its discretion when it limited the Appellant's medical experts to the "four corners" of the Third Amended Complaint as limited by the August 13, 2015 Order. Appellant's Brief at 24. Appellant argues that the trial court precluded expert witnesses Dr. Paynter and Dr. Charash from testifying within the "fair scope" of their expert reports pursuant to Pa.R.C.P. No. 4003.5(c). Appellant specifically avers that the trial court precluded Dr. Charash from testifying that Dr. Gupta failed to recognize the existence of pulmonary edema as a symptom of congestive heart failure. *Id.* at 40.

This Court has held that when an allegation is unsupported by any citation to the record, such that this Court is prevented from assessing this issue and determining whether error exists, the allegation is waived for purposes of appeal. *Commonwealth v. Harris*, 979 A.2d 387, 393 (Pa. Super. 2009). Further, our Rules of Appellate Procedure make clear, "[i]f

reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears." Pa.R.A.P. 2119(c). **See also Hayward v. Hayward**, 868 A.2d 554, 558 (Pa. Super. 2005) (observing it is not the duty of this Court to "scour the record" and "act as the appellant's counsel" and declining to do so).

In arguing Appellant's second issue, Appellant's counsel fails to provide citation to the record as required by Pa.R.A.P. 2119(c). Accordingly, we are unable to determine whether error exists. This issue is, thus, waived.

In her third issue, Appellant avers that the trial court abused its discretion when it ordered counsel to draw up a list of medical terminology and symptoms that could not be referenced in front of the jury due to the court's 8/13/15 Order striking portions of the Third Amended Complaint. Appellant's Brief at 41. Additionally, Appellant argues that the list of prohibited terms improperly precluded lay witnesses from testifying regarding their personal knowledge of Decedent's symptoms, and unfairly limited the cross-examination of Dr. Gupta. **Id.** at 40-41.

During trial, after Appellee had moved several times for a mistrial in response to Appellant's expert witnesses repeatedly testifying about precluded negligence theories over Appellee's objections, the trial court "asked all counsel to prepare a bullet-point list of those areas precluded from the trial by the Pretrial Order" in order to "avoid confusion between

- 10 -

[Appellant]'s original and Third Amended Complaint and in an attempt to avoid further motions for a mistrial." Trial Court Opinion, 2/16/16, at 19-20. In response to this request, Appellant's counsel replied, "Okay, thanks your honor[,]" and failed to object to the creation of the list of prohibited words. N.T. Trial, 1/19/16, at 358.

Appellant now argues that the trial court abused its discretion when it ordered counsel to provide a list of prohibited medical terminology and symptoms. If a party fails to raise a contemporaneous objection with the trial court, the claim is waived on appeal. **Commonwealth v. Powell**, 956 A.2d 406, 423 (Pa. 2008). **See also** Pa.R.A.P. 302 ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Because Appellant's counsel failed to object to the creation of the list of prohibited words, counsel failed to preserve this issue for appellate review.

Appellant also argues that the trial court improperly precluded lay witnesses from testifying regarding Decedent's symptoms. Once again, Appellant's counsel fails to provide citation to the record as required by Pa.R.A.P. 2119(c). We decline to act as Appellant's counsel and scour the record. **See Hayward, supra** at 558. Accordingly, we are unable to determine whether error exists and find this issue to be waived. **See Harris**, **supra** at 393.

Appellant next argues that the trial court unfairly limited the cross-examination of Dr. Gupta. Appellant asserts that Dr. Gupta testified on direct examination that Decedent's heart had a regular rhythm, which

"opened the door" for Appellant's counsel to cross-examine Dr. Gupta as to whether his treatment of Decedent for asthma with a nebulizer of albuterol could have caused or contributed to an arrhythmia, or abnormal heart rate. Appellant's Brief at 44. We disagree.

It is well settled that "[t]he scope of cross-examination is a matter within the discretion of the trial court and will not be reversed absent an abuse of that discretion." *Commonwealth v. Hitcho*, 123 A.3d 731, 769 (Pa. 2015) (citation and quotation omitted). The Rules of Evidence provide: "[a] party witness in a civil case may be cross-examined by an adverse party on any matter relevant to any issue in the case, including credibility, unless the court, in the interests of justice, limits the cross-examination with respect to matters not testified to on direct examination." Pa.R.E. 611(b).

As stated above, the trial court struck the failure "to recognize arrhythmia" and "to detect ventricular bigeminy on the monitor strips"[3] from Plaintiff's Third Amended Complaint. The trial court opined that Dr. Gupta's testimony about his observations during a physical examination using a stethoscope did not "open the door" to cross-examine him regarding arrhythmia. The court noted that such cross-examination would entail dialogue regarding electrocardiogram ("EKG") results as they appeared on

---

[3] Ventricular bigeminy is a particular type of heart arrhythmia. Trial Court Opinion, 2/9/16, at 12.

the EKG monitor strips – a strickened subject. *See* Trial Court Opinion, 2/9/16, at 13. We agree and, thus, find no abuse of discretion.

In her fourth issue, Appellant avers that the trial court erred in denying the MIL in which Appellant's counsel requested an adverse inference instruction due to Northampton's failure to preserve the hospital security videos from the night in question. *See* Appellant's Brief at 25. Appellant argues that because there was conflicting testimony about whether Decedent was in need of a wheelchair or assistance upon discharge from the hospital, the destroyed surveillance video of the hospital parking lot would have corroborated the testimony of Appellant's witnesses. *Id.* at 49.

We review a trial court's decision to grant or deny a MIL for an abuse of discretion. *Parr v. Ford Motor Co*., 109 A.3d 682, 690 (Pa. Super. 2014).

Our Supreme Court has recognized that a common penalty for spoliation of evidence is a jury instruction allowing an inference that the missing evidence would have been unfavorable to the party that destroyed it. *Schroeder v. Com., Dep't of Transp.*, 710 A.2d 23, 27 (Pa. 1998). To determine whether a party's actions warrant such a jury instruction, a trial court must consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party[;] and (3) the availability of a lesser sanction that will protect the opposing party's rights and deter future similar conduct." *Id.* (citation omitted).

- 13 -

To determine "the degree of fault," a trial court must consider two components: 1) the extent of the offending party's duty or responsibility to preserve the relevant evidence; and 2) the presence or absence of bad faith. **_Parr, supra_** at 702. A party has a duty to preserve evidence where the party knows that litigation is pending or likely and it is foreseeable that discarding that evidence would be prejudicial to the opposing party. **_Id._**

In concluding that Northampton did not have a duty to preserve the video and did not act in bad faith, the trial court: (1) opined that even if Northampton knew that litigation was likely, "it was not foreseeable that destroying surveillance tapes from a security camera that captures footage of Easton Hospital's parking lot 'would be prejudicial to the [Appellant']" especially because "the surveillance footage was apparently intended for security and not medical purposes[;]" and (2) found that the hospital taped over the video surveillance tapes during the regular course of business, rather than in bad faith. Trial Court Opinion, 9/2/16, at 24-25. Our review of the certified record indicates that it supports the trial court's conclusions. Accordingly, we conclude the trial court did not abuse its discretion in denying Appellant's MIL for an adverse jury instruction.

Appellant's fifth issue asserts that the trial court erred in granting Dr. Gupta's MIL pertaining to the projection of lost future earnings. Appellant argues that the trial court should have permitted Appellant's expert to testify as to Decedent's lost future earnings without including a deduction for personal maintenance expenses. Appellant's Brief at 26. Appellant correctly

notes that the Medical Care Availability and Reduction of Error Act ("MCARE Act"), pursuant to 40 P.S. § 1303.510, requires damages for lost future earnings to be reduced to present value. Appellant argues, however, that because the statute does not specifically address a deduction for personal maintenance expenses, no such deduction is required when calculating lost future earnings. *Id.* at 50-51. Appellant's claim lacks merit.

Pennsylvania case law has long established that the damages recoverable in a survival action include "the decedent's pain and suffering, the loss of gross earning power from the date of injury until death, and the loss of his earning power—less personal maintenance expenses, from the time of death through his estimated working life span." *Kiser v. Schulte*, 648 A.2d 1, 4 (Pa. 1994). Our Supreme Court has defined "personal maintenance" as what a person "would have spent for those things which are essential to the individual's personal and physical subsistence." *McClinton v. White*, 444 A.2d 85, 87 (Pa. 1982).

In March 2002, the legislature enacted the MCARE Act to ensure, *inter alia*, that "a person who has sustained injury or death as a result of medical negligence by a health care provider [is] afforded a prompt determination and fair compensation." 40 P.S. § 1303.102(4). Section 1303.510 of the MCARE Act provides that future damages for loss of earnings in a medical professional liability action shall be reduced to present value, as follows:

> Future damages for loss of earnings or earning capacity in a medical professional liability action shall be reduced to present value based upon the return that the claimant can earn on a

reasonably secure fixed income investment. These damages shall be presented with competent evidence of the effect of productivity and inflation over time. The trier of fact shall determine the applicable discount rate based upon competent evidence.

40 P.S. § 1303.510.

As Appellant states, this section is silent on whether personal maintenance expenses should be deducted. However, this Court has continued to uphold the deduction of personal maintenance expenses in the calculation of future lost earnings. *See Davis v. Steigerwalt*, 822 A.2d 22, 28 (Pa. Super. 2003) (holding "the measure of damages awarded in a survival action includes the decedent's pain and suffering, the loss of gross earning power from the date of injury until death, and the loss of her earning power—less personal maintenance expenses, from the time of death through her estimated life span"); *Carroll v. Avallone*, 869 A.2d 522, 528–29 (Pa. Super. 2005) (including personal maintenance deduction in calculation of damages in survival action), *reversed on other grounds*, 939 A.2d 872 (Pa. 2007).

Because the MCARE Act does not prohibit a personal maintenance deduction in the calculation of future damages for loss of earnings, and case law decided subsequent to the Act's passage has continued to include the deduction, Appellant's claim that the trial court should have permitted his expert to testify without mention of the deduction of personal expenses is

meritless. Accordingly, we find no abuse of discretion in the trial court's granting Dr. Gupta's MIL pertaining to the projection of lost future earnings.

In Appellant's sixth and final issue, Appellant avers that the trial court erred in granting Appellee's MIL to Preclude Plaintiff from Presenting a Claim of Solatium Damages or for the Non-Pecuniary "Loss of Consortium" of Decedent Ogioba. Appellant's Brief at 53. Appellant argues Decedent's parents should have been allowed to testify as to their emotional and psychological loss as part of the value of lost "services" recoverable in a Wrongful Death Action. *Id.* at 53.

Again, Appellant's counsel fails to provide citation to the record pursuant to Pa.R.A.P. 2119(c), and we decline to act as Appellant's counsel and scour the record. *See Hayward, supra* at 558. Accordingly, we are unable to determine whether error exists and find this issue to be waived. *See Harris*, *supra* at 393.

Judgment affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary



Date: 4/23/18

- 17 -